UNITED STATES of America, Plaintiff–Appellee,

v.

Vere MICHAEL, Defendant–Appellant.

No. 91–5893.

United States Court of Appeals, Eleventh Circuit.

April 5, 1994.

---

Marc A. Gordon, Ft. Lauderdale, FL, for defendant-appellant.

Dexter Lehtinen, U.S. Atty., Lynn D. Rosenthal, Kathleen Salyer, Linda Collins Hertz, Miami, FL, for plaintiff-appellee.

Before BLACK, Circuit Judge, DYER, Senior Circuit Judge, and ALAIMO *, Senior District Judge.

DYER, Senior Circuit Judge:

Michael appeals the denial of his motion for a new trial. He was convicted of conspiracy to possess with intent to distribute cocaine, and possession with intent to deliver cocaine. In his motion for a new trial, Michael contended that he is entitled to dismissal of the indictment or a new trial because of governmental misconduct that occurred at trial. We disagree and affirm. Michael raises other issues [1] which we find to be without merit and do not warrant discussion.

## DISCUSSION

### Standard of Review

■ We review the district court's denial of a motion for new trial under an abuse of discretion standard.

### Reviewability of the Government's Alleged Misconduct

Michael argues that the government's misconduct through its agents was so outrageous in the context of the entire trial so as to shock the universal sense of justice. Thus, he contends that there were plain errors affecting his substantial rights that may be noticed although they were not brought to the attention of the court. Since the misconduct was brought to the attention of the

---

* Honorable Anthony A. Alaimo, Senior U.S. District Judge for the Southern District of Georgia, sitting by designation.

1. The other errors asserted by Michael are that (1) the indictment identified Michael as having an alias, (2) Michael did not knowingly and intentionally waive his *Miranda* rights concerning his statements made to law enforcement personnel, (3) the failure of the district court to submit a special interrogatory of a lesser included offense, and (4) a factual finding by the district court at sentencing that the quantity of cocaine was at least 500 grams was clearly erroneous.

court in his motion for new trial, it may be considered in the context of the entire trial, as to whether the conduct may have prejudiced his substantial rights. *See United States v. Bosby*, 675 F.2d 1174, 1185 (11th Cir.1982).

### The False Testimony at Trial

Michael focuses on three instances in which the government presented false testimony at trial. First, the testimony of government agent Johnson that on January 28, 1991, negotiations between the confidential informant and codefendant Morganti for two kilograms of cocaine had been recorded. After Johnson left the stand the government learned that Johnson was mistaken and that the conversation had not been recorded. The government sought and was given the right to reopen its case so that Johnson could correct his testimony. He did so and the erroneous testimony was immediately corrected.

▉ It is axiomatic that only the knowing use of false testimony constitutes a due process violation. *See e.g., United States v. Lopez*, 985 F.2d 520, 524 (11th Cir.1993); *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir.), *cert. denied*, 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989); *United States v. Willis*, 759 F.2d 1486, 1502 (11th Cir.), *cert. denied*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985).

Second, the testimony of both Agent Johnson and codefendant Morganti that Michael's voice could be heard on the tape recordings regarding negotiations in the IHOP parking lot was false. On cross examination, Morganti admitted that he had been mistaken as to some of the identification. When the tape recording was played during the cross examination of Agent Johnson, he too, testified that he recognized Michael's voice on the tape. Michael points out that Agent Johnson's testimony must have been false because it contradicted DEA Agent Dyer's testimony at the pretrial detention hearing that Michael had remained in his car and had not participated in the conversation.

▉ The fact that Agent Johnson's testimony regarding Michael's participation at the IHOP was contrary to Agent Dyer's testimony at the pretrial detention hearing does not amount to a showing that the government knowingly presented false testimony. It is entirely plausible that Agent Dyer's recollection of what transpired at the IHOP was incorrect. We refuse to impute knowledge of falsity to the prosecutor where a key government witness' testimony is in conflict with another's statement or testimony. *Lopez*, 985 F.2d at 524 (citing *United States v. Brown*, 634 F.2d 819, 827 (5th Cir.1981)). It is undisputed that Michael was present at the IHOP parking lot during the negotiations.

▉ Third, Michael points out the inconsistent testimony of Agent Johnson and codefendant Morganti regarding the manner in which one gram of cocaine had been delivered at the meeting that occurred outside Morganti's residence a few hours after the negotiations at the IHOP. Johnson testified that he observed Michael pass the sample to the confidential informant during a handshake. Morganti testified that the confidential informant handed a sample of cocaine to Morganti and that he did not transfer the sample to the confidential informant but instead destroyed it.

The fact that the witnesses' recollections varied as to one aspect of the meeting falls far short of establishing that the government knowingly presented false testimony to the jury, especially when the witnesses' testimony as to all other details of the meeting was consistent. *See Lopez*, 985 F.2d at 524; *see also, United States v. Miranne*, 688 F.2d 980, 989 (5th Cir.1982) (conflict in testimony is not sufficient evidence of perjury), *cert. denied*, 459 U.S. 1109, 103 S.Ct. 736, 74 L.Ed.2d 959 (1983). There were no discrepancies in the testimony of Agent Johnson and Morganti regarding the time and location of the meeting, the identity of the participants, the fact that the deal was called off and everyone left, as well as the fact that Michael had delivered a sample of cocaine to someone.

▉ Finally, the fact that the government presented additional false testimony after it reopened its case when Johnson testified that it was he who brought the error in his previous day's testimony to the government's at-

tention does not warrant reversal. At the time Johnson made that statement, the prosecutor did not know that it was incorrect. Since there were two prosecutors involved, each assumed that Johnson had alerted the other to the error in his testimony. There was no knowing use of false testimony.

### Subsequent Trial Disclosures

■ Following the trial of this case, the government found that Agent Johnson had made misstatements in this case and in five other cases that had been prosecuted for cocaine violations. This led the government to reevaluate all of the cases in which Johnson had been involved. Ultimately, the government determined that Johnson's testimony was inherently unreliable and would severely undermine the integrity of any prosecution in which Johnson was the uncorroborated primary witness. The government moved to set aside the convictions and dismiss the indictments in the five cases. The government declined to do so in this case because here codefendant Morganti had testified for the government, thus corroborating the crucial testimony of Johnson. Morganti testified in detail regarding the negotiation for the sale of one kilogram at first and to allow the buyers to exchange three-fourths of a kilogram and six thousand dollars for a full kilogram once one became available. He further testified that Michael's attempted delivery of three grams of cocaine to the buyer after all attempts to complete the sale of a full kilogram failed. This evidence standing alone was sufficient to sustain Michael's conviction.

While it is true that the government dismissed the other five cases because of Johnson's inherent unreliability, here the asserted false testimony related only to collateral matters. The government did not present any false or contradictory testimony as to any areas directly related to Michael's guilt of the charged offenses.

### Test for Governmental Misconduct

"Whether outrageous government conduct exists 'turns upon the totality of the circumstances with no single factor controlling' and the defense 'can only be invoked in the rarest and most outrageous circumstances.' *United States v. Haimowitz*, 725 F.2d 1561, 1577 (11th Cir.) (quoting *United States v. Tobias*, 662 F.2d 381, 387 (5th Cir.1981)), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984). "Although federal courts possess the authority to dismiss an indictment for governmental misconduct, dismissal is an 'extreme sanction which should be infrequently utilized.' ... Dismissal is only favored in the most egregious cases." *United States v. Sims*, 845 F.2d 1564, 1569 (11th Cir.) (citations omitted), *cert. denied*, 488 U.S. 957, 109 S.Ct. 395, 102 L.Ed.2d 384 (1988).

### CONCLUSION

In reviewing the totality of the evidence in this case, and especially the incidents in which Agent Johnson gave asserted false testimony, we find all three of these were, at best, collateral matters, none of which was directly related to Michael's guilt. We therefore find no abuse of discretion in the district court's denial of Michael's motion for a new trial. *United States v. Jones*, 913 F.2d 1552, 1565 (11th Cir.1990).

AFFIRMED.