[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 8, 2000
THOMAS K. KAHN
CLERK

_____

No. 94-4281

_____

D. C. Docket No. 85-00701-CR-JLK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDERICK NIGEL BOWE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 8, 2000)**

Before EDMONDSON, BARKETT and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

Frederick Nigel Bowe appeals his conviction for conspiring to import cocaine into the United States in violation of 21 U.S.C. § 963. Bowe claims the district court violated his due process rights by discussing a continuance of the trial date in his absence and by then denying the continuance. Bowe, a Bahamian citizen, also argues that the United States violated the doctrine of specialty by introducing evidence most directly relevant to charges beyond the scope of his extradition. Finally, Bowe claims the court abused its discretion in a wide range of evidentiary matters. Finding none of these claims convincing, we affirm Bowe's conviction.

## I. FACTS AND PROCEDURAL BACKGROUND

Frederick Nigel Bowe was born into a prominent Bahamian family that had substantial investments and real estate holdings in the Exuma islands region of the archipelago. Bowe is an attorney, and in the early 1980s, he had a successful practice in the Bahamas both in criminal defense and representing foreign investors. The United States government believed that Bowe's work for and with some of his clients extended well beyond the practice of law, however, and it indicted Bowe in 1985 for a number of narcotics offenses. After protracted proceedings, the Bahamian government extradited Bowe in 1992. In a diplomatic

2

note, the government of the Bahamas explained that it granted extradition only for the conspiracy count, and the district court dismissed all other charges against Bowe shortly before trial. The trial commenced in November 1993, and after the jury returned a guilty verdict, the court sentenced Bowe to fifteen years in prison and imposed a $250,000 fine.

The conspiracy to import cocaine allegedly began at a Cartagena, Colombia, meeting in 1982. Bowe flew to Cartagena in a leased Lear jet with Jack Devoe, a pilot who flew drugs into the United States, and two Miami lawyers. In Cartagena, Bowe introduced Devoe to Pepe Cabrera, a major drug supplier. Law enforcement had seized two of Cabrera's drug-smuggling planes in the United States, and Cabrera was looking for pilots with their own aircraft to transport his cocaine.

After discussing the logistics of the proposed operation, Cabrera, Devoe, and Bowe allegedly reached an agreement. Devoe would be responsible for picking up Cabrera's cocaine in Colombia and flying it in large shipments to the Bahamas. Devoe would then break down the shipment into smaller quantities and move the cocaine into Florida in a series of flights. Bowe would protect the operation from law enforcement in the Bahamas. Under the terms of this agreement, Devoe was to keep ten percent of the cocaine he transported. Devoe, in turn, would pass ten percent of the money he earned from his sale of that cocaine on to Bowe.

3

Between June 1982 and March 1983, Devoe and pilots he had recruited transported approximately six shipments of cocaine from Colombia, through the Bahamas, and into Florida. During this time, the government contends that Devoe and his business manager made numerous payments to Bowe in accordance with their agreement.

In March 1983, the United States Customs Service seized one of Devoe's planes (and its cache of cocaine) arriving from the Bahamas at the West Palm Beach International Airport. According to the government, Bowe assured one of Devoe's associates that he would determine whether the rest of Devoe's cocaine stored in the Bahamas was safe, and he offered to help Devoe locate another safe landing strip. Devoe was unable to continue transporting cocaine for Cabrera, however, and with Bowe's blessing he turned the operation over to Ron Markowski, another smuggler. Markowski soon had to end his participation in the venture because of an impending indictment by a federal grand jury. Bowe subsequently introduced two other pilots to Cabrera in an effort to keep the operation going. In 1984, however, Colombian authorities arrested Pepe Cabrera, putting an end to the smuggling.

Bowe's chief defense at trial was that he provided legitimate legal services to Cabrera and a number of the others who turned out to be involved in the drug

4

trade, and that he never intended to assist with any smuggling. Bowe testified about his criminal defense practice and the work he did on behalf of seemingly legitimate businesses controlled by Cabrera, Devoe, and others. Other defense witnesses provided corroborating testimony. To rebut this line of defense, the government presented several drug smugglers who testified that they paid Bowe to help them avoid or escape trouble with law enforcement in the Bahamas.

## II. DISCUSSION

Bowe raises a number of issues on appeal; for the sake of organization, we group them in three categories. The first relates to the defendant's motion to continue, filed after one of his attorneys began drug rehabilitation. Bowe contends that the district court erred both in denying the motion to continue and in discussing the matter outside of his presence. Second, Bowe argues that admission of evidence related to the charges dismissed before trial violated the doctrine of specialty, which provides that a defendant may only be tried for the offenses for which he was extradited. Finally, Bowe claims that the court abused its discretion in admitting some evidence offered by the prosecution, in excluding expert testimony regarding the Bahamian practice of paying bonds in cash, and in limiting his cross-examination of a government witness.

5

A. The Motion to Continue

After the Bahamian government extradited Bowe to the United States, the district court set a trial date of February 1, 1993. When Bowe's attorney withdrew his representation, the court rescheduled the trial for June 1993. Bowe was unable to retain new counsel until May, and the defense moved for a continuance so that counsel could adequately prepare. The court rescheduled the case once again, for November 1, 1993.

Rosemarie Robinson, David Rowe, and David Markus were the counsel retained by Bowe. Only Robinson filed a Notice of Appearance, but Markus argued two hearings between May and the middle of August. On August 11, 1993, Markus was arrested, and he subsequently entered a drug rehabilitation program in Atlanta. Markus telephoned the prosecutor on September 7 to advise her of his predicament and ask that she relay a request for a continuance to the court. The government filed a motion notifying the court of these circumstances, and the court convened a status conference on September 14 with the prosecutors, Robinson, and Rowe to consider the matter.

At the conference, defense counsel requested a continuance until Markus completed rehabilitation, explaining that Markus "had the duty of actual litigation" and that Bowe wanted the continuance so that Markus could participate in his

6

defense.[1]  The court asked the defense to file a formal motion requesting the continuance and took the matter under advisement.  Robinson did file a brief motion to continue with affidavits from Markus, explaining that his rehabilitation would take approximately five months and that he would "diligently apply" himself to Bowe's defense, and from Bowe, explaining that he was aware of Markus's arrest and on-going rehabilitation and that he wanted a continuance so that Markus could remain a part of his legal team.[2]  The court denied the motion, concluding that holding the trial in November as planned would "not result in manifest injustice to Defendant."[3]  The court noted "that Defendant has retained several able lawyers, and . . . [that] Defendant is an experienced barrister, [sic] himself."[4]

Bowe argues that the court's handling of the requested continuance was reversible error for three reasons: (1) that he had a due process right to attend the discussion of Markus's rehabilitation and the possible continuance; (2) that denying the motion in effect denied him the opportunity to choose the counsel of

---

[1] Tr. of Proceedings Before the Hon. James Lawrence King at 8 (Sep. 14, 1993), in R.13.

[2] See Mot. to Continue & Exs. C & E, in 2d Supp. R. on Appeal, Tab 209.

[3] Order Den. Def.'s Mot. to Continue at 2, in R.2, Tab 103.

[4] Id.

his choice; and (3) that refusing a continuance denied the defense the opportunity to adequately prepare for trial. None of these contentions have merit.

Criminal defendants have a right, protected by the Due Process Clause, to attend any proceeding at which the defendant's "presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." Snyder v. Massachusetts, 291 U.S. 97, 105-06, 54 S. Ct. 330, 332 (1934). The Due Process Clause requires the defendant's presence only to the extent that "a fair and just hearing would be thwarted by his absence." Id. at 108, 54 S. Ct. at 333; see also United States v. Gagnon, 470 U.S. 522, 526-27, 105 S. Ct. 1482, 1484-85 (1985).

Bowe's presence would not have contributed to the status conference discussion of Markus's rehabilitation and the requested postponement. Bowe does not claim that he had more extensive knowledge concerning Markus's situation (such as the expected length of treatment) than those attending the conference, and his attorneys adequately communicated his desire for a continuance. Other courts have held that defendants have no right to attend procedural conferences "unrelated to any issues at trial." United States v. Oles, 994 F.2d 1519, 1525 (10th Cir. 1993) (no right to attend conference concerning change of counsel and possible continuance of trial date); see also Small v. Endicott, 998 F.2d 411, 414-15 (7th

8

Cir. 1993) (no right to attend scheduling hearing where court made no adverse ruling).

The court's discussion with counsel of a possible continuance was not a formal hearing; in fact it occurred before defense counsel even had filed a motion for continuance. The court did not decide whether to maintain the existing trial date at the time of the discussion; instead it waited until it had the opportunity to review defense counsel's subsequent motion and supporting exhibits. In effect, Bowe's argument is that the Due Process Clause requires district courts to hold hearings, with the defendant present, before ruling on any motion to continue. Such a requirement does not exist. See, e.g., United States v. Santiago-Fraticelli, 730 F.2d 828, 830 (1st Cir. 1984) (court did not err in denying request for continuance without a formal hearing). In particular, hearings are unnecessary when there is no dispute about the facts underlying the request for a continuance. See Bernstein v. Travia, 495 F.2d 1180, 1182 (2d Cir. 1974). When the court in this case denied Bowe's request for a continuance, it had the benefit of an affidavit from Bowe as well as information from Markus and his doctors. In these circumstances, no hearing at all, let alone a hearing with the defendant in attendance, was required to resolve the motion to continue.

Bowe also challenges the court's ultimate denial of the continuance. We review the disposition of requests for trial continuances for abuse of discretion.[5] See United States v. Wright, 63 F.3d 1067, 1071 (11th Cir. 1995). Bowe argues that a different standard of review applies in this case, relying on Smith-Weik Machinery Corp. v. Murdock Machine & Engineering Co., 423 F.2d 842, 845 (5th Cir. 1970),[6] in which this court's predecessor stated: "An exception to this general rule [that the granting or refusal of a continuance is a matter of judicial discretion] exists in certain cases when the illness of counsel is the ground for a continuance." It is unclear, however, if the court intended to create a different standard of review in such cases or if it simply meant that a court can exceed its broad discretion by denying a continuance when counsel takes ill on the eve of trial. The court did not articulate a new standard of review, and the very next statement in the opinion was that "principal counsel was ill, local counsel was relatively unprepared, the time for continuance was short, and the case was complicated. In these circumstances we feel that the general rule must yield to the exception." Id. This is classic "abuse of

___

[5] The party denied the continuance must also show specific, substantial prejudice in some circumstances, such as when the claim is based on an alleged inadequate opportunity to prepare for trial. See United States v. Bergouignan, 764 F.2d 1503, 1508 (11th Cir. 1985).

[6] Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

10

discretion" analysis. Indeed, throughout the Smith-Weik opinion the court carefully considered all of the pertinent facts and weighed the competing interests in expedience versus fairness, and it drew on the abuse of discretion standard in so doing. Id. at 844.

This circuit has never applied a more stringent standard of review in reliance on Smith-Weik when illness of counsel was the grounds for a requested continuance,[7] but even if such an exception to the abuse of discretion standard exists, we are not convinced that it would apply in this case. Bowe requested a postponement of many months, not just a few days as in Smith-Weik, and Bowe's request came not on the eve of trial but with weeks left to prepare. In these circumstances, we see no reason to depart from the abuse of discretion standard of review.

It is undisputed that one aspect of the right to counsel protected by the Due Process Clause is the defendant's right to choose his or her attorney. See Gandy v. Alabama, 569 F.2d 1318, 1323 (5th Cir. 1978). Courts, however, must balance this

---

[7] The only time the Eleventh Circuit has discussed Smith-Weik, we did so just briefly in a footnote. See Arabian Am. Oil Co. v. Scarfone, 939 F.2d 1472, 1479 n.17 (11th Cir. 1991). The appellant in Arabian American appealed the denial of a continuance requested when his counsel withdrew two days before trial. The Arabian American court affirmed the denial of the continuance, finding Smith-Weik inapposite. The court noted that Smith-Weik "created an exception to the trial court's discretion in denying continuances," but concluded that it did not support the notion (suggested by the appellant in Arabian American) that a litigant or attorney must always have ample notice and time to prepare for trial. See id.

11

right with "the general interest in the prompt and efficient administration of justice." Id. Defendants therefore are only guaranteed "a fair or reasonable opportunity" to select the attorney of their choice. See Gandy, 569 F.2d at 1324; Birt v. Montgomery, 725 F.2d 587, 593 (11th Cir. 1984) (en banc).

When deciding whether a denial of a continuance impinged on this "fair and reasonable opportunity," reviewing courts should consider a number of factors, including (1) the length of the delay, (2) whether the counsel who becomes unavailable for trial has associates adequately prepared to try the case, (3) whether other continuances have been requested and granted, (4) the inconvenience to all involved in the trial, (5) whether the requested continuance is for a legitimate reason, and (6) any unique factors. See Gandy, 569 F.2d at 1324. In Gandy, the court held that, when the defendant's trial counsel had a conflict with the scheduled trial date, denying a continuance was an abuse of discretion, in part because the delay requested was brief and no other attorney was prepared to try the case. See id. at 1327-28. Furthermore, counsel's conflict in Gandy came to light on the morning the trial was to begin. See id. Having weighed the factors outlined in Gandy, we conclude that the district court did not deny Bowe a reasonable opportunity to select the counsel of his choice. The postponement requested by Bowe was lengthy and open-ended, and Markus's absence left Bowe with two

12

attorneys well versed in his case. In fact, Robinson was the only attorney who had filed a notice of appearance on Bowe's behalf by August 1993; Markus had not done so. Finally, Markus entered rehabilitation more than two months before Bowe's scheduled trial date, and the court's denial of the continuance on October 4 still left the defendant with almost a month to find additional counsel for his defense team if he so desired.

Bowe also argues that denying his motion to continue left the defense with an inadequate amount of time to prepare for trial. Bowe cites <u>United States v. Verderame</u>, 51 F.3d 249, 252 (11th Cir. 1995), in which this court held that denying motions to continue and rushing a case to trial thirty-four days after the arraignment amounted to an abuse of discretion and violated the defendant's due process rights. We agree that "[i]mplicit in [the] right to counsel is the notion of adequate time for counsel to prepare the defense," <u>id.</u>, but the facts in this case stand in sharp contrast to the scenario in <u>Verderame</u>. Bowe was arraigned in August 1992, more than a year before trial. Robinson and Rowe began representing Bowe in May 1993, approximately six months before trial.[8]

---

[8] Bowe argues that his situation was actually more extreme than that in <u>Verderame</u> because Robinson and Rowe had not previously done trial work and thus were "completely lacking the expertise or the experience with which to prepare." Br. for Appellant at 28. Bowe cites no record evidence regarding his counsel's work history. Moreover, we do not find counsel's previous experience particularly relevant because Bowe had time to add an attorney with litigation experience to his defense team after the court denied the motion for continuance.

13

Furthermore, the <u>Verderame</u> court noted that the government's case grew more complicated as the trial approached. <u>See</u> <u>id.</u> In contrast, although the prosecution's case against Bowe was undoubtedly complex and expansive, the court actually eased the defense's task by dismissing twelve of the thirteen counts against Bowe shortly before the trial. Under these circumstances, we conclude that Bowe's attorneys had ample opportunity to prepare his defense, and the district court did not abuse its discretion in denying his motion to continue.

B. Doctrine of Specialty

The doctrine of specialty dictates that "a nation that receives a criminal defendant pursuant to an extradition treaty may try the defendant only for those offenses for which the other nation granted extradition." <u>United States v. Puentes</u>, 50 F.3d 1567, 1572 (11th Cir. 1995). Article seven of the extradition treaty in effect between the United States and the Bahamas incorporates the doctrine of specialty.[9] On the basis of this doctrine, the district court dismissed twelve of the thirteen counts against Bowe when the government of the Bahamas objected that they were beyond the scope of its agreement to extradite him. Notwithstanding

---

[9] Extradition Treaty, Dec. 22, 1931, U.S.-Gr. Brit., art. 7, 47 Stat. 2122, 2124 (1932), adopted by the Commonwealth of the Bahamas on its independence from the United Kingdom.

14

this action by the court, Bowe claims that in effect he was brought to trial on all of the counts because of the sweeping nature of the evidence introduced by the prosecution at trial.

According to Bowe, he is raising a simple matter of contract law, but he characterizes the issue as novel and alerts us that "[a]n interested international community awaits [the] Court's answer."[10] In fact, we have answered the questions raised in Bowe's argument before. It is well settled in this circuit that the doctrine of specialty limits only the charges on which an extradited defendant can be tried; it does not affect the scope of proof admissible at trial for the charges for which extradition was granted, see Puentes, 50 F.3d at 1576, and it does not alter the forum country's evidentiary rules, see United States v. Archbold-Newball, 554 F.2d 665, 685 (5th Cir. 1977). Addressing the specific issue in this case, we have in the past allowed the government to introduce evidence of uncharged drug and money laundering activities to obtain conspiracy convictions against extradited defendants. See United States v. Lehder-Rivas, 955 F.2d 1510, 1520 (11th Cir. 1992). Because Bowe was charged with and convicted of only the conspiracy to

---

[10] Br. for Appellant at 42. Bowe eschews international law jargon and case law, describing the issue matter of factly as whether or not the United States honored the terms of its agreement with the Bahamas regarding Bowe's extradition.

15

import cocaine, for which the Bahamian government approved his extradition, the prosecution's sweeping evidentiary case did not violate the doctrine of specialty.

C. Evidentiary Issues

Beyond the broad evidentiary challenge in his doctrine of specialty claim, Bowe raises a number of more specific evidentiary issues. We review the court's resolution of these evidentiary issues for abuse of discretion, and if such an abuse occurred, we ask whether the error was harmless. See United States v. Hands, 184 F.3d 1322, 1326, 1329 (11th Cir. 1999).

A few witnesses, notably Pury Aldereguia and Benjamin Crumpler, testified about Bowe's efforts to protect their drug smuggling operations before the time frame covered in the indictment. The court admitted this testimony pursuant to Federal Rule of Evidence 404(b) as probative of Bowe's intent in his subsequent dealings with Pepe Cabrera and Jack Devoe. Bowe notes that in order to admit evidence of extrinsic acts under Rule 404(b), there must be an adequate basis for the jury to conclude that the defendant actually committed those acts. See United States v. Miller, 959 F.2d 1535, 1538 (11th Cir. 1992) (en banc). According to Bowe, "[t]he other crimes evidence in this case consisted primarily of erroneous

16

and unfounded assumptions voiced by cooperating witnesses."[11]  The focus of this complaint is Aldereguia's testimony, in which the witness acknowledged that she did not actually see Bowe bribe government officials during many of the incidents she described.

Bowe's challenge to the Rule 404(b) evidence is without merit.  The prosecution can introduce evidence of a defendant's otherwise admissible acts if the jury could find by a preponderance of the evidence that the acts did in fact occur.  See Huddleston v. United States, 485 U.S. 681, 689, 108 S. Ct. 1496, 1501 (1988).  Aldereguia's testimony satisfies this standard.  Notwithstanding Bowe's characterization, Aldereguia was detailed and specific both on direct and cross-examination; the witness related incidents she had observed and conversations she had with Bowe while admitting to gaps in her knowledge.   In this circuit, the uncorroborated word of an accomplice such as Aldereguia provides a sufficient basis for concluding that the defendant committed extrinsic acts admissible under Rule 404(b).  See United States v. Trevino, 565 F.2d 1317, 1319 (5th Cir. 1978).

Bowe also claims that the court failed to strike lay opinion testimony by Aldereguia.  The only specific example Bowe provides is Aldereguia's testimony that Bowe "illegally" obtained the release of a fisherman from jail.  It is hard to

---

[11] Br. for Appellant at 48.

ascribe error to anything related to that statement by the witness, however, because, taken as a whole, it is almost incomprehensible. Asked when Bowe first became involved with her drug smuggling, Aldereguia responded: "The first time was when he got, actually I got a man out for him, he got a man out for me illegally who was a fisherman."[12] The witness later clarified her statement: the fisherman was charged with illegally fishing for lobster and he was not involved with drugs; Aldereguia paid Bowe $5,000 to represent him in court, and Bowe obtained an acquittal.[13]

As a more general matter, it was permissible for Aldereguia to elaborate on and explain the facts she related to the limited extent that she did. Non-expert witnesses may offer their opinions if they are rationally based on the witnesses' own perception and if they either help clarify the witnesses' other testimony or determine a fact in issue. See Fed. R. Evid. 701. Aldereguia's testimony concerned facts of which she had direct knowledge—events she observed and conversations she had relating to her drug operation.

Bowe's third challenge to Aldereguia's testimony is that she made the "startling claim" that the defendant negotiated on her behalf with government

_____

[12] Trial Tr., in R.21, at 6.

[13] See Trial Tr., in R.21, at 8, 23-24, 72-74.

18

officials to purchase marijuana seized by the Bahamian defense force.[14]  Bowe

cites this as one example of a broader problem, namely that throughout its case, the

United States unfairly put the government of the Bahamas on trial.  Most of the

evidence relating to corruption in the Bahamas was relevant, even essential,

because the thesis of the prosecution's case was that Bowe paid Bahamian officials

so that drug smugglers could avoid or escape trouble.  Some of the evidence may

have been unnecessary (Jack Devoe, for example, testified about his relationship

with the former Prime Minister of the Bahamas), but it was not directly related to

the defendant and was so fleeting as to be harmless.

In another challenge to evidence introduced by the government, Bowe

argues that the prosecution engaged in misconduct, which violated his due process

rights, by asking Devoe to testify about a meeting he attended with Carlos Ledher

and Bowe concerning a proposed smuggling arrangement even though the

prosecution knew that Ledher had stated he "did not engage in any criminal

activities with the defendant."[15]  To make out a claim of prosecutorial misconduct

in this context, however, the defendant must establish both that Devoe's testimony

was false and that the prosecutors knew so.  See United States v. Michael, 17 F.3d

---

[14] Br. for Appellant at 46.

[15] Government's 14th Supp. Resp. to Standing Disc. Order at 1, in R.2, Tab 105.

1383, 1385 (11th Cir. 1994). Bowe cannot satisfy either requirement. First, Devoe's testimony about the meeting does not necessarily conflict with Ledher's statement denying any criminal activities with Bowe.[16] Second, even if we were to assume that Devoe committed perjury and accept the fact that his testimony conflicts with Lehder's statement, the conflict would not establish that the government knew the testimony was false. See id. In the absence of other indications that the prosecutors believed Devoe's testimony to be false, we cannot conclude that they engaged in misconduct by asking him about the meeting with Ledher and Bowe.

Finally, Bowe contends that Devoe's testimony about Ledher's statements at the meeting constitute inadmissible hearsay. Federal Rule of Evidence 801(d)(2)(E) excludes statements by co-conspirators of the defendant from the definition of hearsay, but Bowe argues this exclusion applies only to the conspiracy charged in the indictment. Bowe contends that the prosecution never delineated who was part of the charged conspiracy and was thus able to make

---

[16] The fact that Bowe was present when Ledher and Devoe discussed a possible smuggling operation does not mean that Bowe was engaging in criminal activity himself, or at least that Ledher would construe Bowe's presence as criminal. As Devoe testified, Bowe introduced him to Ledher but did not participate much in their conversation. See Trial Tr., in R.17, at 77. Moreover, the meeting did not bear fruit; Devoe never agreed to transport cocaine for Ledher. See Trial Tr., in R.15, at 81.

impermissibly broad use of the co-conspirator hearsay exception.[17]  In fact, it is Bowe who takes too *narrow* a view of Rule 801(d)(2)(E), because the conspiracy that forms the basis for admitting a co-conspirator's out of court statements need not be the same conspiracy for which the defendant is charged.  See United States v. Arce, 997 F.2d 1123, 1128 (5th Cir. 1993); United States v. Dawson, 576 F.2d 656, 658 (5th Cir. 1978) (statements by a non-testifying participant in an uncharged conspiracy are admissible against defendant for charged offenses).  Bowe does not deny as part of this argument that he conspired with Lehder and other witnesses testifying pursuant to Rule 404(b), so their hearsay statements were admissible.

In regard to the defense's case, Bowe argues that the court erred in excluding as irrelevant expert testimony that lawyers in the Bahamas often post bond in cash, and that at times such payments are made directly to magistrates or law enforcement officials.  Bowe contends that this testimony would have informed the jury's interpretation of prosecution witnesses who had testified that Bowe made payments to police and defense officials to secure the release of detained smugglers and the return of smuggling boats.  In support of his argument, Bowe

---

[17] Bowe does not provide examples beyond Devoe's testimony, but he intimates that the court permitted other hearsay testimony on the same suspect grounds..

cites cases holding that custom and practice evidence can be essential to a criminal defense.  See United States v. Gaskell, 985 F.2d 1056, 1062-64 (11th Cir. 1993); United States v. Riley, 550 F.2d 233, 236-37 (5th Cir. 1977).

In this case, however, we agree with the district court that the proffered expert testimony would have been irrelevant; at worst, excluding the testimony amounted to harmless error.  The fact that lawyers often make legitimate bond payments in cash does little to explain the witnesses' specific allegations against Bowe.  Furthermore, rather than explaining that these alleged payments were for posting bond, Bowe denied making many of them at all when he took the stand.[18]

Bowe also claims that the court erred in limiting his counsel's cross-examination of Pepe Cabrera regarding the witness' consultations with Bowe about legal matters during 1982 and 1983.  According to Bowe, this information would have helped demonstrate that his was a legitimate professional relationship with Cabrera.  In fact, the court stated that it *would* allow cross-examination on the extent of Bowe's legal work for Cabrera, prohibiting only an inquiry into the specific nature of crimes for which Cabrera was a suspect or had been indicted.[19]

---

[18] See Trial Tr., in R.25, at 135-36, 146, 153-54.

[19] See Trial Tr., in R.18, at 46-56.

22

We agree with the district court that such detail was irrelevant, and we find no error in the limit placed on the cross-examination of Cabrera.

III. CONCLUSION

We find no reversible error in the district court's handling of Bowe's requested continuance, in regard to the doctrine of specialty, or in the various evidentiary issues raised in the appeal. Therefore, Bowe's conviction is AFFIRMED.