[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 19, 2006
THOMAS K. KAHN
CLERK

_____

Nos. 05-16538, 05-16539, 05-16835
Non-Argument Calendar

_____

D. C. Docket No. 04-22173-CV-AJ

ADREAN LANS,

Plaintiff-Appellant,

versus

MELISSA STUCKEY,
DONALD LAGO,
ARIEL SAUD,
SALVADOR LOZANO,
JORGE HUGO GOMEZ,
CITY OF MIAMI,
a Florida Municipal corporation,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(October 19, 2006)

Before MARCUS, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Adrean Lans, proceeding pro se, appeals several adverse rulings related to the judgment against his complaint of misconduct by the City of Miami and five of its police officers during the course of Lans's arrest on charges of soliciting prostitution. We affirm.

## I. BACKGROUND

On the evening of September 5, 2001, Miami police officers Melissa Stuckey, Donald Lago, Ariel Saud, Salvador Lozano, and Jorge Gomez were involved in a "reverse-sting" operation regarding solicitation of prostitution. Stuckey was standing at a bus stop, posing as a prostitute. Lans drove by in his car. After several events, discussed below, Lago brought Lans in a police car to the Allapattah police station, while Saud drove Lans's vehicle to the station. At the station, Gomez completed the paperwork regarding Lans's arrest, and Lozano prepared the paperwork for the impoundment of Lans's vehicle.

According to the facts found by the district court following a bench trial, Lans had driven by Stuckey and offered her money in exchange for oral sex. Stuckey gave a signal for Lans to be taken down, after which Lago ordered Lans to get out of his vehicle. Lago performed a pat-down search, took Lans immediately into custody, and brought Lans to the police station.

Lans's version of the arrest differs.  Lans contends that he recognized Stuckey when he drove by her and, for that reason, offered her a ride, which she declined.  Lans contends that Lago never received a "take-down" signal.  Lago stopped Lans, and took Lans's wallet and two cell phones, but then let Lans drive away after being told by Stuckey to do so.  Lans alleges that he returned to retrieve a cell phone from Lago, was stopped again, and was taken into custody by Lago, who brought Lans to the police station.

Lans filed a complaint with claims for relief under both federal and state law.  Lans alleged in his complaint that Stuckey, Lago, Saud, Lozano, Gomez, and the City of Miami are liable to him for damages based on violations of his federal civil rights.  See 42 U.S.C. § 1983.  Lans's complaint also asserted claims against Stuckey, Lago, Saud, Lozano, and Gomez for malicious prosecution and claims against all the defendants for false imprisonment and false arrest.

During discovery, Lans served subpoenas duces tecum on Stuckey and Gomez together with notices of depositions.  Lans later filed two motions to compel Stuckey and Gomez to produce additional documents in compliance with the subpoenas.  The magistrate judge to whom discovery motions had been referred denied Lans's motions.

Lago, Saud, Lozano, and Gomez moved for summary judgment on all the

3

claims against them, and the City of Miami moved for summary judgment on the section 1983 claim against it. The district court denied Lago's motion and granted the motions filed by Saud, Lozano, Gomez, and the City of Miami. The district court held a bench trial on all the claims against Stuckey and Lago and on the false arrest claim against the City of Miami. Gomez, Stuckey, Lago, and Lans testified. Crediting the testimony of the police officers, the district court concluded that the officers had probable cause to arrest Lans and granted judgment to Stuckey, Lago, and the City of Miami on all of the remaining claims against them. Lans filed three separate notices of appeal, which have been consolidated for this decision.

## II. DISCUSSION

Lans appeals (1) the denial of two of his motions to compel; (2) the conclusion of the district court that Stuckey and Lago had probable cause to arrest Lans for soliciting prostitution, and the finding of fact that supports the conclusion; (3) the grant of summary judgment to Saud, Lozano, and Gomez; (4) the grant of summary judgment to the City of Miami; (5) the denial of a motion for a continuance that he filed during trial; and (6) the denial of a motion to recuse that he filed after the trial ended. We discuss each issue in turn.

4

*A. The Magistrate Judge Did Not Abuse His Discretion in Denying Lans's Motions To Compel*

"When reviewing a . . . denial of a motion to compel discovery, we apply an abuse of discretion standard." Holloman v. Mail-Well Corp., 443 F.3d 832, 837 (11th Cir. 2006). The district court is permitted a "range of choice," and we will not "second-guess" its actions unless they "reflect a clear error of judgment." Id. (internal quotation marks omitted). The magistrate judge did not abuse his discretion. The magistrate judge concluded that Stuckey and Gomez had complied with Lans's subpoenas duces tecum to the full extent possible. The magistrate judge credited certain representations made under oath by Stuckey and Gomez at their depositions, as well as representations made in open court by counsel for the defendants. The magistrate judge did not commit a clear error of judgment in crediting those representations.

*B. The District Court Did Not Err in Concluding That There Was Probable Cause for Lans's Arrest*

At the bench trial, the district court credited the testimony of the officers and found that Lans had offered Stuckey money in exchange for oral sex. On the basis of that finding, the district court concluded that there was probable cause for Lans's arrest. Lans contends that the district clearly erred in its finding of fact and in its conclusion that probable cause existed. We disagree.

5

We review de novo the determination that probable cause existed, but review the supporting findings of fact for clear error. United States v. Jiminez, 224 F.3d 1243, 1248 (11th Cir. 2000). Determinations of witness credibility fall within the exclusive province of the fact-finder and may not be revisited unless the testimony is "'incredible as a matter of law.'" United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997) (quoting United States v. Hewitt, 663 F.2d 1381, 1386 (11th Cir. 1981)). Witness testimony is incredible as a matter of law only when it is "unbelievable on its face" and when it testifies to "facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature." Id. (internal quotation marks omitted).

Lans's arguments that the district court erroneously found probable cause fail. Because Stuckey's testimony that Lans offered her money in exchange for oral sex is not incredible as a matter of law, the district court correctly determined that there was probable cause for Lans's arrest for soliciting prostitution. See Fla. Stat. § 796.07. That the district court did not find that Lans actually paid Stuckey or that Lans had any money on his person is immaterial, because the crime of soliciting prostitution does not require the actual exchange of money. That the officers also may have arrested Lans under the wrong subsection of the Florida prostitution statute is of no moment. "'[W]hen an officer makes an arrest, which is

6

properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest.'" Lee v. Ferraro, 284 F.3d 1188, 1196 (11th Cir. 2002) (quoting United States v. Saunders, 476 F.2d 5, 7 (5th Cir.1973)).

### C. Even if Erroneous, the Grant of Summary Judgment to Saud, Lozano, and Gomez Was Harmless Error

We review a grant of summary judgment de novo. Bosarge v. U.S. Dep't of Educ., 5 F.3d 1414, 1417 (11th Cir. 1993). The district court granted Saud, Lozano, and Gomez summary judgment against Lans's claim under section 1983 based on qualified immunity. Qualified immunity protects police officers performing discretionary functions from liability under section 1983 as long as their conduct does not violate a clearly established constitutional right. See Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988). After an officer establishes that his acts were within the scope of his discretionary authority, the burden then shifts to the plaintiff, id. at 1563-64, who faces a two-step inquiry: the plaintiff must (1) establish that the officer violated a constitutional right and (2) establish that the violated right was clearly established, Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004).

At the summary judgment stage, Lans contended that the evidence

7

demonstrated that Saud, Lozano, and Gomez participated in a bad faith and illegal arrest that violated his clearly established constitutional rights. The district court disagreed. As to Lans's state law claims against Saud, Lozano, and Gomez, the district court also granted summary judgment, because it determined that the Florida sovereign immunity statute, Fla. Stat. § 768.28(9)(a), shielded the officers.

Even if the district court erred in entering summary judgment, any error was harmless. Because we affirm the conclusion of the district court following the bench trial that there was probable cause for Lans's arrest, Lans could not in any event have sustained any of his claims against Saud, Lozano, or Gomez. The summary judgment, even if erroneous, "did not affect the substantial rights of the parties." Fed. R. Civ. P. 61; cf. Wilson v. Muckala, 303 F.3d 1207, 1219 (10th Cir. 2002) (holding that grant of summary judgment, even if erroneous, was harmless in light of later determinations by jury).

### D. Even if Erroneous, the Grant of Summary Judgment to the City of Miami Was Harmless Error

A municipality may be liable under section 1983 for the actions of a police officer "only when municipal 'official policy' causes a constitutional violation." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978)). A plaintiff must "'identify a municipal "policy" or "custom" that caused [his]

8

injury.'" Id. (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388 (1997)). The district court granted summary judgment to the City of Miami on the ground that Lans failed to identify a policy or custom.

Even if the district court erred, the error was harmless. Because we affirm the conclusion of the district court following the bench trial that there was probable cause for Lans's arrest, Lans could not in any event have established that he was arrested illegally and suffered a constitutional violation. Lans could not have sustained his section 1983 claim against the City of Miami.

*E. The District Court Did Not Abuse Its Discretion in Denying Lans's Motion for a Continuance*

During the bench trial, in the middle of his direct examination of Stuckey, Lans filed a motion for a continuance. Lans argued two bases for his motion: (1) the need to obtain deposition transcripts for the purpose of impeaching witnesses; and (2) the need to procure the attendance of his physician, who would testify as to medical damages. The district court denied the continuance, but informed Lans that, in the event that he prevailed on liability, he would have the opportunity to bring in his physician on the issue of damages. Lans contends that the district court erred in denying his motion. We disagree.

As a preliminary matter, the district court effectively granted Lans a continuance with respect to the testimony of Lans's physician, and as to the

9

continuance with respect to the deposition transcripts, we review the denial of a motion for a trial continuance for abuse of discretion. United States v. Bowe, 221 F.3d 1183, 1189 (11th Cir. 2000). We consider four factors: (1) the extent of the movant's diligence in his efforts to be ready on the date of the trial; (2) how likely it is that the need on which the request for the continuance was based could have been met had the continuance been granted; (3) the extent to which the continuance would have inconvenienced the court and the opposing parties; and (4) the extent to which the movant might have suffered harm as a result of the denial. Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1350-51 (11th Cir. 2003) (quoting Hashwani v. Barbar, 822 F.2d 1038, 1040 (11th Cir. 1987)). We are "mindful that '[t]he denial of a continuance is within the broad discretion of the district court and will not be overturned unless arbitrary or unreasonable.'" Id. (quoting Hashwani, 822 F.2d at 1040).

The district court did not abuse its discretion. Lans had taken depositions more than seven months before the trial, and at the summary judgment hearing, approximately six weeks before the trial, the district court had reminded Lans to order deposition transcripts. As of the day of the trial, Lans had not ordered the transcripts. Lans's extreme lack of diligence, coupled with the fact that the trial had already begun, gave the district court ample reason to deny Lans a

10

continuance.

*F. The District Court Did Not Abuse Its Discretion in Denying*
*Lans's Motion To Recuse*

On November 9, 2005, several days after the bench trial had concluded and judgment had been entered against Lans, Lans filed a motion to recuse the district court. See 28 U.S.C. § 455(a). In a thorough order, the district court denied Lans's motion. Lans contends that the district court erred. We disagree.

Section 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Id. We review the decision of the district court not to recuse under section 455(a) for abuse of discretion. United States v. Bailey, 175 F.3d 966, 968 (11th Cir. 1999). The district court did not abuse its discretion. Except for Lans's disagreement with certain rulings that the district court made during the bench trial, all of the grounds upon which Lans relies for his motion to recuse were known to him before the district court ruled against him on the merits. We have previously held that a party, "knowing the facts claimed to support a § 455(a) recusal for appearance of partiality[,] may not lie in wait, raising the recusal issue only after learning the court's ruling on the merits." Phillips v. Amoco Oil Co., 799 F.2d 1464, 1472 (11th Cir. 1986) (citing United States v. Slay, 714 F.2d 1093, 1094 (11th Cir. 1983)). As for the rulings during the bench trial, those rulings cannot serve as the

11

basis for a recusal motion unless the movant also demonstrates "pervasive bias and prejudice" by the district court. McWhorter v. City of Birmingham, 906 F.2d 674, 678 (11th Cir. 1990) (internal quotation marks omitted). The district court exhibited no bias or prejudice against Lans. On the contrary, the transcript reflects that the district court exhibited patience in the face of ad hominem attacks by Lans, and the district court attempted repeatedly to assist Lans with perfecting this appeal.

### III. CONCLUSION

The judgment against Lans is

**AFFIRMED.**