[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-10833

_____

RICARDO ALBERTO MARTINELLI BERROCAL,

Plaintiff-Appellant,

*versus*

ATTORNEY GENERAL OF THE UNITED STATES,
U.S. SECRETARY OF STATE,
THOMAS B HEINEMANN,
Office of the Legal Adviser for Law Enforcement
and Intelligence, United States Department of State,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-23511-BB

————————————

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

JILL PRYOR, Circuit Judge:

Ricardo Alberto Martinelli Berrocal, a former president of the Republic of Panama, appeals the district court's dismissal of his lawsuit against the Attorney General of the United States; the United States Secretary of State; and Thomas Heinemann, a former official of the United States Department of State, for lack of standing. While Martinelli was residing in the United States, Panama sought his extradition under the Panama-United States bilateral extradition treaty. After the United States extradited Martinelli to Panama, Panamanian officials prosecuted him for money laundering crimes that Panama did not include in its extradition request. In his complaint, Martinelli alleged that the money laundering prosecutions violated the treaty's rule of specialty provision. He sought a declaratory judgment ruling that the defendants erred in communicating to the Panamanian officials that the rule of specialty would not bar the money laundering prosecutions.

Martinelli argues on appeal that the district court erred in determining that he failed to establish standing under Article III of the Constitution because he could not show that his alleged harm was fairly traceable to the defendants' actions and that his

requested relief would redress his injuries. He also contends that the district court erred when it concluded that he lacked standing under the treaty's rule of specialty provision. After careful review, and with the benefit of oral argument, we affirm the district court's dismissal of Martinelli's complaint for lack of standing.

## I.      BACKGROUND

In 2015, the Republic of Panama indicted Martinelli, charging him with crimes that allegedly occurred between 2009 and 2014. Because Martinelli was residing in Miami, Florida, at the time he was indicted, Panama submitted an extradition request to the United States.

Panama sought extradition pursuant to the Treaty Between the United States of America and the Republic of Panama Providing for the Extradition of Criminals, Pan.-U.S., May 25, 1904, 34 Stat. 2851 ("Pan.-U.S. Treaty"). The treaty contained a rule of specialty, or specialty doctrine, provision stating:

> No person surrendered by either of the high contracting parties to the other shall, without his consent, freely granted and publicly declared by him, be triable or tried or be punished for any crime or offense committed prior to his extradition, other than that for which he was delivered up, until he shall have had an opportunity of returning to the country from which he was surrendered.

Pan.-U.S. Treaty, art. VIII (the "Rule of Specialty").

In its extradition request, Panama listed four charges for which it sought to try Martinelli. A federal magistrate judge issued an order of extradition, and Martinelli was extradited to Panama.

In August 2019, a Panamanian court acquitted Martinelli of the four charges listed in the extradition request. After his acquittal, the Panamanian court ordered the removal of restrictions on his travel outside of Panama that had been imposed after he was extradited.

Panama's government appealed Martinelli's acquittal.[1] It also considered bringing additional charges against him. The Attorney General of Panama asked the United States government whether the Rule of Specialty still applied to Martinelli. In December 2019, Heinemann, the Assistant Legal Adviser for the Department of State's Law Enforcement and Intelligence Unit, responded that the Department did "not believe that the Rule of Specialty continues to apply under the circumstances of this case" because Martinelli "has been free to travel outside Panama since September 15, 2019."[2] Doc. 1-21 at 3.[3] Thus, he explained, "Panama is free to

---

[1] On November 20, 2020, a Panamanian appellate court set aside the trial court's judgment of acquittal and ordered a new trial for Martinelli. At a second trial, he was again found not guilty on the four charges listed in the extradition request.

[2] Martinelli disputes that he was free to travel outside of Panama after the Panamanian court lifted his travel restrictions on August 26, 2019. As we explain below, our resolution of this appeal does not turn on this disputed fact.

[3] "Doc." numbers refer to the district court's docket entries.

further prosecute [Martinelli] without obtaining a waiver of the Rule of Specialty." *Id.* Heinemann's letter followed one he had sent earlier that year laying out the procedures under the treaty for requesting a waiver of the Rule of Specialty. In the earlier letter, Heinemann had written that a party seeking a waiver of the rule "shall make the request in the same manner and form as an original extradition request." Doc. 1-20 at 3. He continued that "[t]he requested party shall decide whether to approve waiver requests in conformity with its domestic laws and procedures." *Id.*

In July and August 2020, Panama charged Martinelli with two new counts of money laundering for crimes that allegedly occurred before his extradition. These crimes had not been listed in Panama's original extradition request. Martinelli later was convicted of one of the money laundering charges, and the other remains pending.

In December 2020, the State Department followed up Heinemann's December 2019 letter, which opined that the Rule of Specialty did not apply to Martinelli, with its own diplomatic note sent to Panama's Ministry of Foreign Affairs through the United States Embassy. In the diplomatic note, the Department explained that Heinemann spoke "on behalf of the Government of the United States on [the Rule of Specialty] issue." Doc. 1-15 at 7. The Department also included a third letter from Heinemann, dated October 2020 and addressed to Panama's Minister of Foreign Affairs, reiterating the United States government's position that the Rule of Specialty no longer applied to Martinelli.

About two years later, Martinelli sued the United States Attorney General, the United States Secretary of State, and Heinemann. In his complaint, Martinelli alleged he was injured by having to face the two money laundering prosecutions in Panama because of Heinemann's letters, which erroneously advised the Panamanian officials that the Rule of Specialty no longer applied to him. For his desired relief, Martinelli requested that the court issue a declaratory judgment ruling that: (1) Heinemann lacked authority to offer the opinion that the treaty's Rule of Specialty no longer applied to Martinelli; (2) the treaty "contains conditions subsequent that must be satisfied for the protections of the Rule of Specialty to become extinct"; (3) Heinemann's letters could not waive the Rule of Specialty as to Martinelli; (4) Heinemann's interpretation of the treaty was erroneous; (5) Heinemann lacked the authority to speak on behalf of the United States regarding the waiver of the treaty's Rule of Specialty; (6) the State Department's adoption of Heinemann's opinion violated the Administrative Procedure Act; and (7) the Rule of Specialty continues to apply to Martinelli. Doc. 1 at 28–29.

The defendants moved to dismiss Martinelli's complaint for lack of standing and for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

The district court granted the defendants' motion to dismiss because the court concluded that Martinelli lacked standing under Article III and the Rule of Specialty. As to Article III standing, the

court concluded that Martinelli failed to establish that his injury was traceable to the named defendants or that the declaratory judgment he requested would redress the harm caused by the money laundering prosecutions. Further, the district court ruled that Martinelli lacked standing under the Rule of Specialty because the United States government waived its right to object to a violation of the rule and Martinelli's rights were derivative of the government's rights under the treaty.

## II.    STANDARD OF REVIEW

We review *de novo* issues of standing. *Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs*, 100 F.4th 1349, 1355 (11th Cir. 2024).

## III.    DISCUSSION

On appeal, Martinelli argues that the district court erred in concluding that he failed to establish standing to bring his claims under (1) Article III of the Constitution and (2) the treaty's Rule of Specialty. We first address constitutional standing and then turn to standing under the Rule of Specialty.

### A.    Martinelli Lacks Article III Standing.

"To bring suit in federal court, a party must have constitutional standing, which is 'an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Worthy v. City of Phenix City*, 930 F.3d 1206, 1213 (11th Cir. 2019) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "To have standing, an individual plaintiff must have suffered an injury in fact, fairly

traceable to the defendant, that the court can redress with an order directed at the defendant." *Baughcum v. Jackson*, 92 F.4th 1024, 1031 (11th Cir. 2024) (citing *Lujan*, 504 U.S. at 560–61). And "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

Martinelli argues that the district court erred in concluding that he failed to establish Article III standing because his prosecutions in Panama were not fairly traceable to Heinemann's letters. He also challenges the district court's conclusion that a ruling in his favor would not redress his alleged harm. As we explain below, the district court correctly concluded that Martinelli failed to meet Article III standing's traceability and redressability requirements.[4]

    1.    *Martinelli's prosecutions in Panama were not fairly traceable to Heinemann's letters.*

To satisfy the traceability, or causation, requirement of standing, "a plaintiff's injury must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020) (quoting *Lujan*, 504 U.S. at 560). But "[p]roximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). "[E]ven

---

[4] Because the defendants do not dispute that the money laundering prosecutions in Panama satisfied Article III standing's injury-in-fact requirement, we address only the traceability and redressability requirements.

23-10833                Opinion of the Court                9

harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003).

Martinelli contends that the money laundering prosecutions in Panama are traceable to Heinemann's letters, which provided the United States's view that the Rule of Specialty would not bar the prosecutions. In Martinelli's view, Heinemann's letters gave the Panamanian officials the "go-ahead" to prosecute him. Appellant's Br. 13. He thus urges us to conclude that he satisfied the traceability requirement because the Panamanian officials' decision to prosecute him flowed from Heinemann's letters.

The Supreme Court has explained that a theory of causation based on an "independent action of [a] third party not before the court" makes Article III standing more difficult to establish. *Lujan*, 504 U.S. at 560 (internal quotation marks omitted); *see also California v. Texas*, 593 U.S. 659, 675 (2021) (explaining that "where a causal relation between injury and challenged action depends upon the decision of an independent third party . . . standing is not precluded, but it is ordinarily substantially more difficult to establish" (internal quotation marks omitted)). And we have previously concluded that a plaintiff failed to establish traceability when the plaintiff complained of actions performed by an independent third-party rather than the named defendants. *See Jacobson*, 974 F.3d at 1253–54 (declining to impute actions performed by "independent officials" to a named defendant "for purposes of establishing

traceability"). Martinelli's complained of action is the decision of an independent third party, the Panamanian government, to prosecute him. Thus, he must show "at the least 'that [the] third part[y] . . . react[ed] in predictable ways'" when it caused him harm. *California*, 593 U.S. at 675 (quoting *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019)).

Initially, Martinelli contends that the Panamanian government was not an independent third party because the Panamanian officials and Heinemann did not act independently of one another. We disagree. The decision to prosecute Martinelli was made by officials of an independent sovereign. Martinelli failed to allege that the Panamanian officials acted in concert with Heinemann and the State Department in prosecuting him or were in any way obligated to prosecute him after their receipt of Heinemann's letters. Instead, Martinelli alleged—at most—that Panamanian prosecutors "relied" on Heinemann's opinion that the Rule of Specialty was inapplicable to him. Doc. 1 ¶¶ 57, 60. And Heinemann communicated this opinion only in response to an inquiry from the Attorney General of Panama—not as part of a concerted effort to influence Panama's decision to prosecute Martinelli. In other words, the Panamanian prosecutors' decision to prosecute Martinelli was made in their own discretion.

Still, Martinelli argues that he established traceability because Panama's prosecution of him was "predictable" given the determinative or coercive effect of Heinemann's letter. Reply Br. 7 (internal quotation marks omitted). The Supreme Court examined

whether the determinative or coercive effect of a defendant's actions on a third party could satisfy the traceability requirement in *Bennett v. Spear*, 520 U.S. 154 (1997). In *Bennett*, the plaintiffs, irrigation districts and ranch operators, sued the Fish and Wildlife Service ("FWS") after the FWS distributed a biological opinion under the Endangered Species Act of 1973 to the Bureau of Reclamation concerning a Bureau-administered irrigation project's impact on endangered fish. *Id.* at 157–59. After the FWS issued the opinion, the Bureau of Reclamation administered the irrigation project in accordance with the opinion. *Id.* at 159. The Bureau's administration of the project served as the last act causing harm to the plaintiffs. *Id.* But the Bureau was not required to follow the FWS's opinion because the Bureau "retain[ed] ultimate responsibility for determining whether and how a proposed action shall go forward." *Id.* at 168. The question before the Court was whether the plaintiffs had standing to "seek judicial review of the biological opinion under the" Endangered Species Act. *Id.* at 157.

The Court concluded that the plaintiffs established Article III standing. *Id.* at 179. Addressing causation, the Court acknowledged that injuries that were "the result of the *independent* action of some third party not before the court" would not meet the traceability requirement. *Id.* at 167 (emphasis added). But the Court also explained that an "injury produced by *determinative or coercive effect* upon the action of someone else" could. *Id.* at 169 (emphasis added). Examining the opinion's effect on the Bureau, the Court explained that although it served an "advisory function, . . . in reality it ha[d] a powerful coercive effect" because of the administrative

scheme, which required the Bureau to provide its reasons for deviating from the opinion's recommendations and run the risk that its employees might be subject to civil fines and criminal penalties if they "t[ook] an endangered or threatened species" in a manner that contravened the opinion. *Id.* at 169–70 (internal quotation marks omitted). Further, the Court reasoned that the FWS's guidance that its instructions accompanying the opinion were "nondiscretionary, and must be taken by the Bureau" showed that the FWS was "keenly aware of the virtually determinative effect of its biological opinions." *Id.* at 170 (alteration adopted) (internal quotation marks omitted). Thus, the Court concluded, the traceability requirement was satisfied because the FWS's opinion coerced and predetermined the Bureau's administration of the project under the administrative scheme, which made it difficult for the Bureau to proceed in a manner that conflicted with the opinion. *Id.* at 169–71.

Like *Bennett*, this case presents the question whether a third party's compliance with a defendant's opinion letter is sufficient to satisfy Article III's traceability requirement. But that is where the similarities end. Unlike the regulatory scheme's determinative and coercive effect making it difficult for the Bureau to contravene the opinion letter's guidance in *Bennett*, the Panamanian officials served a separate sovereign, and Martinelli failed to allege that there was an administrative structure here to coerce or predetermine the Panamanian officials' assent to Heinemann's opinion that the Rule of Specialty was inapplicable or to prosecute Martinelli.

Taking a step back, Heinemann's opinion letter also was not the result of a concerted government effort to coerce the Panamanian officials or predetermine their conduct. Instead, Heinemann sent the letter only because the Attorney General of Panama requested it. In sum, Martinelli failed to demonstrate that the money laundering prosecutions in Panama were fairly traceable to Heinemann's letters because "an independent source would have caused [Martinelli] to suffer the same injury." *Walters v. Fast AC, LLC*, 60 F.4th 642, 651 (11th Cir. 2023) (quoting *Swann v. Sec'y, Ga.*, 668 F.3d 1285, 1288 (11th Cir. 2012)). Next, we address the redressability requirement.[5]

> 2.      *A favorable declaratory judgment would not redress Martinelli's alleged harm.*

To satisfy Article III's redressability requirement, "[i]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted). In other words, "a decision in [the] plaintiff's favor [must] significantly increase the likelihood that she would obtain relief that directly redresses the injury that she claims to have suffered." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th

---

[5] Because Martinelli cannot establish causation, we need not address whether he satisfied the remaining requirements of Article III standing. Still, because the district court addressed redressability, we do, too. *See Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc) (addressing redressability after concluding the plaintiffs failed to establish causation).

Cir. 2019) (en banc) (alterations adopted) (internal quotation marks omitted).

Martinelli argues that he satisfied Article III's redressability requirement because a favorable declaratory judgment would likely lead to the dismissal of his money laundering prosecutions in Panama. He reasons that a declaratory judgment setting aside Heinemann's letters "would reinstate the Rule of Specialty protections to [him]" and "would require the [State Department] to notify the . . . Panamanian authorities that the contents of the letters are no longer valid and cannot be relied upon." Appellant's Br. 20–21. In his view, a declaratory judgment voiding Heinemann's opinion letters would "significantly increase the chances" that he would "not face prosecution for money laundering." *Id.* at 17. Therefore, his theory of redressability hinges on how the third-party Panamanian officials and a Panamanian court would react to a United States court's entry of a declaratory judgment in Martinelli's favor.

We have explained that when a plaintiff's theory of redressability depends on the possible future actions of nonparties, "[a]ny persuasive effect a judicial order might have upon . . . absent nonparties who are not under [the defendant's] control, cannot suffice to establish redressability." *Jacobson*, 974 F.3d at 1254. Rather, "it must be the effect of the court's judgment on the defendant—not an absent third party—that redresses the plaintiff's injury, whether directly or indirectly." *Lewis*, 944 F.3d at 1301 (emphasis omitted) (internal quotation marks omitted).

To meet his burden to show that the effect of the district court's judgment against the defendants—not the judgment of the Panamanian court, which is not a party to this case—would redress his injury, Martinelli points us to Article 548 of the Procedural Penal Code of the Republic of Panama and the doctrine of *pacta sunt servanda*. Martinelli explains that the article "restricts the prosecution of extradited individuals for crimes committed before their surrender unless consent is given by the foreign state[,]" and the *pacta sunt servanda* doctrine implies "a general obligation to respect treaty commitments, including court rulings regarding those treaties." Appellant's Br. 17–18. The combined effect of both, he contends, yields the conclusion that "[a] favorable judgment would mandate the dismissal of the two criminal proceedings against [him], since no foreign state has given such consent." *Id.* at 18.

We disagree. Article 548 would not require Panamanian courts to dismiss or overturn Martinelli's prosecutions. Instead, even if the Rule of Specialty applies, under Panamanian law, the decision whether to void a criminal prosecution is discretionary. *See* Doc. 33-14 at 6 (stating that a criminal process "*may* be declared void" if the article's conditions are met (emphasis added)). Therefore, Article 548 would merely leave it to a Panamanian court's discretion whether to void Martinelli's prosecutions based on the Rule of Specialty.[6] And Martinelli's argument also overlooks the

---

[6] Contrary to Martinelli's arguments, we find it hard to believe that Panamanian courts would do so. Panama's highest tribunal has since affirmed one of Martinelli's convictions, and a trial date has been set in his other prosecution.

possibility that Panama would ask the United States to waive the Rule of Specialty if the United States government's opinion that the rule did not apply was deemed erroneous by a United States court. Indeed, the article expressly does not apply when a nation state waives the Rule of Specialty's protections. *Id.* Therefore, Martinelli can demonstrate only that it is *possible*—left to the discretion of both a Panamanian court and the United States government—that Article 548 would be used to dismiss or overturn his prosecutions in Panama.

Nor can the *pacta sunt servanda* doctrine carry the day for Martinelli. Although he is correct that the doctrine generally "provides that a treaty in force is binding upon the parties to it and must be performed by them in good faith[,]" he cannot show that a United States court's determination that the Rule of Specialty applied to him would significantly increase the likelihood that a Panamanian court would dismiss the money laundering prosecutions. *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 433 (2d Cir. 2001) (internal quotation marks omitted). All the doctrine would require here is that a Panamanian court consider the Rule of Specialty to be an available defense and determine, in good faith, if it precluded Martinelli's money laundering charges given the facts and circumstances of his case. Put differently, there is no language in Article VIII, the treaty's Rule of Specialty provision, requiring that the requesting nation defer to the requested nation's Rule-of-Specialty determination. Therefore, the Panamanian court would still need to decide whether the treaty's Rule of Specialty applied to Martinelli, regardless of how the United States resolved that question. So

the *pacta sunt servanda* doctrine does not help Martinelli establish redressability.

We have previously declined to rely on "a series of speculative events" to establish redressability. *Baughcum*, 92 F.4th at 1034. That is what Martinelli asks us to do here. At best, his proposed version of future events merely makes it possible, instead of significantly more likely, that a favorable declaratory judgment would grant him relief from his prosecutions in Panama. *Lewis*, 944 F.3d at 1301. Thus, he cannot establish redressability.

Our conclusion is bolstered by an analogous case where we considered whether Article III standing's redressability requirement was satisfied when business owners sued the Florida Attorney General and sought a declaration that a newly enacted state law was unlawful and an injunction to keep her from enforcing it. *See Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1200 (11th Cir. 2021). We concluded that the plaintiffs failed to demonstrate redressability because other state agencies—not the Florida Attorney General's Office—would be responsible for enforcing the law. *See id.* at 1205 (concluding that redressability was not established because "the Attorney General has no enforcement authority" and "a judgment against the Attorney General would bind only her, and not other parties not before this Court"). In reaching this conclusion, we reasoned that "a plaintiff's injury isn't redressable by prospective relief where other state actors, who aren't parties to the litigation, would remain free and clear of any

judgment and thus free to engage in the conduct that the plaintiffs say injures them." *Id.*

Martinelli's redressability arguments fail for similar reasons. Like the Florida Attorney General, the defendants here have no enforcement authority over the Panamanian prosecutions of which Martinelli complains. And even if the defendants were ordered to disclaim Heinemann's letters opining that the Rule of Specialty was inapplicable to Martinelli, the Panamanian officials would remain "free and clear of any judgment and thus free to engage in the conduct that" injures Martinelli. *Id.* The Panamanian officials would not be "obliged in any binding sense to honor an incidental legal determination this suit produces." *Jacobson*, 974 F.3d at 1254 (alterations adopted) (internal quotation marks omitted). The Supreme Court has instructed us that redressability cannot be met in these circumstances. *See Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) ("[R]edressability requires that the court be able to afford relief through the exercise of its power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power." (emphasis omitted) (internal quotation marks omitted)).

In sum, Martinelli cannot demonstrate redressability because his desired relief would neither bind the Panamanian officials to drop his prosecutions nor make it significantly more likely that they would do so. At most, Martinelli can show that a favorable declaratory judgment *may* persuade the Panamanian officials that the Rule of Specialty bars the money laundering prosecutions. But

"[a]ny persuasive effect a judicial order might have upon . . . absent nonparties who are not under [the defendant's] control, cannot suffice to establish redressability." *Jacobson*, 974 F.3d at 1254.

Martinelli cannot establish Article III standing due to his failure to satisfy the doctrine's traceability and redressability requirements.

## B.    Martinelli Failed to Establish Standing Under the Rule of Specialty.

In this section, we address whether Martinelli established standing under the treaty's Rule of Specialty. We assume, without deciding, that notwithstanding his failure to establish Article III standing the Rule of Specialty could bestow standing to challenge a foreign sovereign's prosecutions of him following his extradition from the United States. We nonetheless conclude that he lacks standing because his standing under the Rule of Specialty was at the sufferance of the United States and extinguished when the United States consented to his prosecutions in Panama.[7]

---

[7] As we explain in this section, we have previously recognized that a rule of specialty in a treaty may grant individuals extradited to the United States standing to challenge their subsequent prosecution by the United States. *See United States v. Puentes*, 50 F.3d 1567, 1569 (11th Cir. 1995) (concluding that a criminal defendant could establish standing to allege a violation of the rule of specialty in a case where an individual extradited from a foreign state to the United States challenged his post-extradition prosecution by the United States). Our conclusion was based in part on earlier Supreme Court decisions which, like *Puentes*, arose where criminal defendants challenged on rule-of-

20                    Opinion of the Court                    23-10833

Generally, under a rule of specialty, also called the specialty doctrine, a state that requests the extradition of an individual "can prosecute that person only for the offense for which he or she was surrendered by the requested state or else must allow that person an opportunity to leave the prosecuting state to which he or she had been surrendered." *United States v. Utsick*, 45 F.4th 1325, 1333 (11th Cir. 2022) (internal quotation marks omitted). An extradited individual "has standing under the doctrine of specialty to raise any objections which the requested nation might have asserted." *United States v. Puentes*, 50 F.3d 1567, 1575 (11th Cir. 1995); *see also United States v. Lehder-Rivas*, 955 F.2d 1510, 1520 (11th Cir. 1992) (explaining that "the extradited person may raise only those objections to the extradition process that the surrendering country might consider a breach of the extradition treaty" (internal quotation marks

---

specialty grounds their prosecutions by the United States following their extraditions to the United States. *See United States v. Rauscher*, 119 U.S. 407 (1886) (recognizing for the first time the rule of specialty in a case where an individual extradited from a foreign state to the United States challenged his post-extradition prosecution by the United States); *United States v. Alvarez-Machain*, 504 U.S. 655 (1992) (analyzing the scope of the rule of specialty in a case where an individual abducted from a foreign state and brought to the United States challenged his subsequent prosecution by the United States). But Martinelli's theory of standing under a treaty's rule of specialty appears to be one of first impression in this circuit. He challenges his prosecution by a *foreign sovereign* following his extradition *from* the United States. Even if he is correct that a rule of specialty may grant standing to challenge post-extradition prosecutions by a foreign sovereign, we conclude that he failed to establish standing under the treaty's Rule of Specialty here. So we need not and do not decide that question today.

omitted)). Issues concerning the doctrine of specialty typically arise in federal court when an extradited individual moves to dismiss charges brought by the United States government based on a foreign government's objection to the charges under an extradition treaty's rule-of-specialty provision. *See, e.g.*, *United States v. Bowe*, 221 F.3d 1183, 1191 (11th Cir. 2000).

But standing under a rule of specialty is not absolute. We have explained that the extradited individual "may enjoy these protections only at the sufferance of the requested nation." *Puentes*, 50 F.3d at 1574. That is, "[t]he individual's rights are derivative of the rights of the requested nation." *Id.* If "the requested nation" waives "its right to object to a treaty violation," the defendant then lacks "standing to object to such an action." *Id.* at 1575; *see* John J. Barrett III, Note, *The Doctrine of Specialty: A Traditional Approach to the Issue of Standing*, 29 Case W. Res. J. Int'l L. 299, 302 (1997) (explaining that "the requested state can nullify the individual's objection to specialty by consenting to the additional charges").

The United States and Panama extradition treaty's Rule of Specialty provides that the requesting country may not prosecute the extradited individual "for any crime or offense committed prior to his extradition, other than that for which he was delivered up, until he shall have had an opportunity of returning to the country from which he was surrendered." Pan.-U.S. Treaty, art. VIII. Martinelli argues that he has standing under this provision to challenge Heinemann's letters because it "is not whether the [United States] has filed a complaint or intends to, but if it potentially could" that

determines his derivative rights, including standing, under the provision. Appellant's Br. 32–33. In support, he cites *United States v. Alvarez-Machain*, 504 U.S. 655, 667 (1992), in which the Supreme Court explained that when an extradition treaty is self-executing, "it would appear that a court must enforce it on behalf of an individual regardless of the offensiveness of the practice of one nation to the other nation." Therefore, in Martinelli's view, because the United States *could* have objected to his money laundering prosecutions in Panama, he has standing under the Rule of Specialty to challenge Heinemann's letters.

We remain unpersuaded. As we explained in *Puentes*, although *Alvarez-Machain* clarified that there is no requirement for "an affirmative protest by the requested nation in order for the extradited individual to contest personal jurisdiction under the rule of specialty[,]" an extradited individual's standing under the rule of specialty is still "at the sufferance of the requested nation." *Puentes*, 50 F.3d at 1575 (internal quotation marks omitted). So, although a requested nation's protest may not be required to establish standing under the rule of specialty, the requested nation's express consent, or waiver of an objection, to a prosecution can extinguish it. And a letter from the United States Embassy to Panama's Ministry of Foreign Affairs, attached to Martinelli's complaint, reflects that the United States consented to Martinelli's money laundering prosecutions in Panama. The State Department adopted Heinemann's October 29, 2020 letter stating that "Panama is free to further prosecute Mr. Martinelli without obtaining a waiver of the Rule of Specialty from the United States" and submitted it to Panamanian

authorities as the official position of the United States. Doc. 1-15 at 4, 7. As we have explained, Martinelli's ability to challenge Heinemann's letters under the Rule of Specialty was "only at the sufferance" of the United States government. *Puentes*, 50 F.3d at 1574. Thus, the government's express consent to his prosecutions in Panama extinguished his standing to challenge Heinemann's letters under the Rule of Specialty provision.

Our conclusion is consistent with our earlier decision in *United States v. Diwan*, 864 F.2d 715 (11th Cir. 1989). There, we considered whether the United States breached a treaty's rule of specialty when an individual extradited from Great Britain to the United States challenged his indictment on rule-of-specialty grounds. *Id.* at 720–21. We explained that the answer hinged on whether Great Britain "would regard the prosecution as an affront to its sovereignty" because the extradited individual's rights under the rule of specialty were "derivative in nature." *Id.* at 721. Turning to the record, we recognized that the correspondence between the two countries indicated that Great Britain did not object to the prosecution. *See id.* (explaining that "[a]s the correspondence between the sovereigns unequivocally denotes, Great Britain does not regard the prosecution . . . as a breach of the extradition treaty"). Thus, we concluded, the extradited individual's "interpretation to the contrary is not relevant." *Id.*

The same is true here. Like in *Diwan*, the correspondence between the United States and Panama "unequivocally denotes" that the United States "does not regard" the money laundering

prosecutions of Martinelli in Panama to be a "breach of the extradition treaty." *Id.* Thus, as we concluded in *Diwan*, Martinelli's "interpretation to the contrary is not relevant." *Id.* And because the United States government unequivocally consented to the prosecutions, it does not matter that, as Martinelli contends, Heinemann and the State Department failed to follow the treaty's waiver provisions and the Department's waiver guidance.

Finally, our conclusion that Martinelli's standing under the Rule of Specialty was extinguished by the United States's express consent to the money laundering prosecutions is buttressed by our longstanding deference to the Executive Branch's judgment in political decision-making relating to extradition. As we have previously explained, "the judicial role is narrow when it comes to . . . matters of extradition." *Arias Leiva v. Warden*, 928 F.3d 1281, 1286–87 (11th Cir. 2019). By contrast, the Executive Branch, "is 'well situated' to weigh the 'sensitive foreign policy issues' inherent in this sphere—and, we would add, politically accountable in a way that the courts are not." *Id.* at 1287 (quoting *Munaf v. Geren*, 553 U.S. 674, 702 (2008)). At its core, Martinelli's complaint asks a United States court to reverse the Executive Branch's decision to consent to the money laundering prosecutions in Panama following extradition. But "[w]e are loath to override the position of the United States on matters of extradition, which, after all, is an executive function derived from the President's power to conduct foreign

23-10833              Opinion of the Court                      25

affairs." *Id.* at 1289 (internal quotation marks omitted). We decline to do so here.[8]

## IV.    CONCLUSION

For the reasons set forth above, we affirm the district court's dismissal of Martinelli's complaint for lack of standing under Article III and the Rule of Specialty.

**AFFIRMED.**

---

[8] Because Martinelli lacks standing to bring this suit under Article III and the Rule of Specialty, we lack jurisdiction to address the defendants' argument that he failed to state a claim in his complaint. *See Gardner v. Mutz*, 962 F.3d 1329, 1339 (11th Cir. 2020) ("[B]ecause standing to sue implicates jurisdiction, a court *must* satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim . . . ." (emphasis in original) (internal quotation marks omitted)).