[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14812
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cr-00232-SDM-CPT-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RONALD JOHN BANKSTON, III,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 23, 2019)

Before MARTIN, NEWSOM, and GRANT, Circuit Judges.

GRANT, Circuit Judge:

Ronald John Bankston III appeals his 130-month sentence, which he received after convictions for possessing a firearm as a felon, possessing body armor as a violent felon, and distributing methamphetamine. On appeal, Bankston objects—for the first time—to a two-level enhancement to his sentence for the "use" of body armor under section 3B1.5 of the United States Sentencing Guidelines; he says there was no evidence that he used body armor as defined in that guideline. After careful consideration, we think he is right and vacate his sentence.

## I.

In the spring of 2016, guns, ammunition, and two body-armor vests were stolen from a law enforcement officer's vehicle. Two days later, a confidential informant gave local police a tip about the location of one of the stolen guns. That same day, an undercover detective and the confidential informant went to see Bankston, who sold them one of the stolen guns, the two body-armor vests, ammunition, and methamphetamine.

Bankston pleaded guilty to two counts of unlawful possession and one count of distributing methamphetamine. In calculating Bankston's sentence, the district court relied on the presentence investigation report (PSR). Pointing to Bankston's selling of body-armor vests, the PSR enhanced Bankston's sentence by two levels for the "use" of body armor in a drug trafficking offense. *See* U.S. Sentencing Guidelines § 3B1.5 (Nov. 2016). Without any objection from Bankston, the district court adopted the PSR's recommendation on that issue. The two-level enhancement put Bankston's offense level at 27. Combined with his criminal

2

history category of VI, his Guidelines range was 130 to 162 months.  The district court sentenced Bankston to 130 months, as recommended by the United States.

## II.

We review for plain error because Bankston failed to protest the application of the body-armor enhancement guideline in the district court.  *United States v. Beckles*, 565 F.3d 832, 842 (11th Cir. 2009).  To meet the plain-error standard, Bankston must establish that (1) an error occurred; (2) the error was obvious; (3) it affected his "substantial rights in that it was prejudicial and not harmless;" and (4) it "seriously affects the fairness, integrity, or public reputation of the judicial proceedings."  *Id.* (citation and punctuation omitted).  The Supreme Court has instructed that, once those "conditions have been met, the court of appeals should exercise its discretion to correct the forfeited error."  *See Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1905 (2018) (citation and punctuation omitted).

## III.

Applying that standard here is straightforward.  An error is obvious when it flies in the face of either binding precedent or "the explicit language of a statute or rule."  *See United States v. Chau*, 426 F.3d 1318, 1322 (11th Cir. 2005) (per curiam) (citation and punctuation omitted); *accord United States v. Bennett*, 472 F.3d 825, 834 (11th Cir. 2006) (per curiam) (miscalculated Guidelines range was plain error).  Here, we have no precedent interpreting the relevant language, and our analysis begins and ends with the language of the Sentencing Guidelines.  "Our interpretation of the sentencing guidelines and accompanying commentary is governed by traditional rules of statutory construction."  *United States v. Perez*,

3

366 F.3d 1178, 1182 (11th Cir. 2004). The Guidelines also "must be read together" with the commentary. *United States v. Ferreira*, 275 F.3d 1020, 1029 (11th Cir. 2001) (citation and punctuation omitted). In fact, "commentary in the Sentencing Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. Hall*, 714 F.3d 1270, 1272 (11th Cir. 2013) (citation and punctuation omitted).

Section 3B1.5 provides a two-level enhancement "[i]f the defendant was convicted of a drug trafficking crime or a crime of violence" and "the offense involved the use of body armor." U.S.S.G. § 3B1.5(1), (2)(A). The commentary defines "use" as either "active employment in a manner to protect the person from gunfire" or "use as a means of bartering." U.S.S.G. § 3B1.5, cmt. n.1. In short, there are only two ways to "use" body armor under the guideline, and neither of them involves selling it.

Yet the only evidence of "use" here was that Bankston sold the armor for money. Although the PSR asserted that Bankston's sale of body armor amounted to use as a means of bartering, selling is an activity that under both common usage and dictionary definition falls outside of bartering. In fact, "barter" means to trade goods or services *without using money*. *See, e.g.*, Webster's New World College Dictionary (5th ed. 2018) ("trade by exchanging goods or services without using money"); The American Heritage Dictionary of the English Language (5th ed. 2016) (similar); New Oxford American Dictionary (3d ed. 2010) (similar); Black's Law Dictionary (10th ed. 2014) (similar).

4

Of course, the Guidelines could have defined "use" to "include both monetary and barter transactions"—as they did when defining "for pecuniary gain." U.S.S.G. § 2B1.5, cmt. n.5(A). But here they did not. And we "presume that the Sentencing Commission said what it meant and meant what it said" in the Guidelines and their commentary. *United States v. Shannon*, 631 F.3d 1187, 1190 (11th Cir. 2011) (citation and punctuation omitted). So only using body armor for protection or barter gives rise to the enhancement at issue here.

Despite the plain meaning of the guideline and its commentary, the government offers legislative history. That legislative history, we are told by the United States, reveals the guideline's true purpose: "to take body armor out of the hands of violent criminals and drug traffickers." No matter. A "guideline's meaning is derived first from its plain language and, absent ambiguity, no additional inquiry is necessary." *United States v. Cruz*, 713 F.3d 600, 607 (11th Cir. 2013) (citation omitted). "When the import of the words Congress has used is clear, as it is here, we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language." *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) (en banc); *see Perez*, 366 F.3d at 1182 (rules of statutory construction apply to Sentencing Guidelines and commentary). As at least one other court has also concluded, the plain language of the body-armor enhancement guideline "precludes its application to the sale of body armor." *See United States v. Juarez*, 866 F.3d 622, 633 (5th Cir. 2017) (reviewing a preserved challenge).

5

Understandably, the parties seem to agree that if Bankston shows that the district court obviously erred in applying the body-armor enhancement, he will have also satisfied the last two prongs of the plain-error standard. "When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016). That showing of error satisfies the plain-error standard's third prong, prejudice—unless a case presents some "unusual circumstances." *Id.* at 1347. We find nothing unusual about the facts and circumstances of this case: following the government's recommendation, the district court sentenced Bankston to 130 months, the lowest end of his Guidelines range. Without the two-level enhancement for "use" of body armor, Bankston's Guidelines range is 110 to 137 months. We conclude that Bankston has shown a reasonable probability that the outcome would be different under the correct range.

As for the plain-error standard's last factor, "[t]he risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error." *Rosales-Mireles*, 138 S. Ct. at 1908. A faulty enhancement, therefore, "ordinarily will satisfy" the fourth prong, at least when the other three factors are met. *Id.* Bankston meets this test.

Bankston "was not 'bartering' by selling body armor." *Juarez*, 866 F.3d at 633. The district court thus committed plain error by applying the two-level

6

increase for use of body armor in the commission of a drug trafficking offense. We vacate Bankston's sentence and remand for resentencing without the body-armor enhancement.

**VACATED AND REMANDED.**