[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11046

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SCOTT GOLDSTEIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cr-00187-VMC-TGW-1

_____

Before WILSON, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Defendant-Appellant Scott Goldstein appeals his sentence of four months' imprisonment imposed following the district court's revocation of his supervised release under 18 U.S.C. § 3583(e)(3). On appeal, Goldstein argues that the district court violated his equal protection and due process rights by conditioning his freedom on his ability to pay restitution without inquiring as to why he did not pay. Second, he argues that the court imposed a substantively unreasonable sentence by giving impermissibly significant weight to his inability to pay restitution. Third, he argues that the court plainly erred by not allowing him to allocute before announcing its sentence.

After careful review of the record, we agree with Goldstein that the district court failed to make the required inquiry into the reason for Goldstein's nonpayment.

## I.      Background

In 2017, Goldstein was convicted in the Northern District of Illinois of wire fraud in violation of 18 U.S.C. § 1343. Goldstein received a sentence of 33 months in prison, followed by three years of supervised release. In addition, the district court ordered Goldstein to pay $245,500 in restitution. As a condition of his supervised release, Goldstein would need to pay at least 10% of his monthly income towards the restitution cost. Monthly income was defined as "income net of reasonable expenses for basic necessities such as

food, shelter, utilities, insurance, and employment related expenses." After his release from prison, Goldstein began serving his term of supervision on March 2, 2021.

In June of 2023, jurisdiction was transferred to the Middle District of Florida. A few months later, the United States Probation Office petitioned the district court to issue a summons, alleging that Goldstein violated his conditions of supervised release for the following conduct: (1) failing to make restitution payments between January 17, 2023, and October 3, 2023, and (2) committing new criminal conduct by leaving the scene of a crash without giving information. Regarding the alleged restitution violation, probation reported Goldstein had only made five payments totaling $450 since the start of his period of supervision. Goldstein's most recent payment occurred on January 17, 2023, and he did not make any payments after receiving notice from the probation office that he had to increase his monthly payments on July 19, 2023.

Goldstein appeared as summonsed and was appointed counsel from the Office of the Federal Defender. At his revocation hearing on December 4, 2023, he admitted to both violations. The district court found him guilty and calculated Goldstein's guidelines range of imprisonment at five to eleven months. The court then proceeded to sentencing. Because our decision depends on the lack of appropriate inquiry into Goldstein's ability to pay restitution, we include a detailed discussion of his two hearings.

At sentencing, the government deferred to probation—and probation recommended the court revoke Goldstein's supervised

release, impose a sentence of time served, to be followed by one year of supervised release with all previously imposed conditions. In response, defense counsel stated that Goldstein had been on short-term disability due to a shoulder operation before his incarceration that he did not receive physical therapy for in prison.[1] Defense counsel also explained Goldstein's job as a golf instructor did not involve a salary or an hourly rate. Instead, Goldstein needed to build up a clientele. During the hearing, the district court judge expressed strong feelings about restitution. She discussed a different defendant who "strung [her] out," by not paying restitution, which would "never happen again." The court then asked Goldstein: "You can't pay it? Or you choose not to pay it?" Before he could answer, the court continued, "[b]ecause I'm sure you had your cell phone. I'm sure you had cable. I'm sure you went out to dinner."

After defense counsel explained that Goldstein had an upcoming surgery, the district court granted a continuance. The district court said "absolutely, without a doubt, he will go to prison for five to six months if this is not brought up to date." The court concluded "no excuses. He's in—oh he's in a cast, oh, he's in the hospital. Doesn't count. Doesn't count."

At the final revocation hearing on March 28, 2024, defense counsel explained that Goldstein's financial position had improved.

---

[1] The district court stated the following about Goldstein's physical condition: "Despite the fact that he's showing up in a——some kind of a cast or apparatus around his shoulder, I'm assuming he's, generally speaking, able-bodied."

He had made his monthly payments of $261 and paid an additional $2,500 in February 2024.  Because the probation calculation brought his arrears after those payments to $5,000, defense counsel requested a six-month extension to Goldstein's term of supervised release.  The district court however repeatedly took issue with Goldstein, describing the situation as one that essentially forced the court "to be a collection agency."  In response to defense counsel's attempts to explain that an extension would give Goldstein an opportunity to continue making his restitution payments, the court said "[t]hat would be a great argument if this were his first time here."  This prompted defense counsel to again bring up Goldstein's underlying health conditions.  Defense counsel additionally noted that reincarceration would prevent the victims from receiving restitution.

The court read aloud portions of a memorandum from probation, stating for example, that in March 2021, Goldstein "should have paid at least $230 towards his restitution, but in that same month he spent $483 on fine dining."  The court then noted that in February 2022, Goldstein spent $717 "on golfing and apparel."  And, while the court acknowledged that Goldstein worked as a golf instructor, it noted that he should have bought these golf materials at "cheaper stores" like the "Salvation Army."  Finally, the district court described how from December 2022 through January 2023, Goldstein spent $522 on Amazon "presumably for items that were not a necessity."

6                    Opinion of the Court                    24-11046

Defense counsel attempted to explain the miscommunication regarding probation's $7,500 figure, to which the court responded, "I'm not going to give your client another chance.  I'm going back from my own words and I told him no extensions, no continuances.  You are going to prison if you do not bring up what you owe.  I was very clear.  That's it."  The district court judge also mentioned she had "been burnt" before by defendants who did not pay restitution.

When defense counsel asked if the court would consider home confinement, the court said, "I think he needs to do his straight time in months and be done with it."  After stating an intent to sentence Goldstein to four months in prison, the court asked both the government and defense counsel if they had anything to say.  Neither did.  The court then asked, "[a]nything you wish to say, Mr. Goldstein?"  He admitted to "buying a lot of stuff" but said the Amazon purchases were for "buying bulk of paper towel and toilet paper and that kind of stuff where it is cheaper."  He said if he had known he needed to pay $7,500 he would have.  The court said it did not believe him and asked "[a]nything else you wish to say, Mr. Goldstein?"  He declined.

The court revoked his supervised release and sentenced Goldstein to four months in prison followed by no supervised release.  The court noted it considered the factors of 18 U.S.C. § 3553(a), the Sentencing Commission's advisory guidelines, and the policy statements.  Defense counsel objected to "the manner in

which the sentence was imposed on substantive and procedural grounds." Goldstein timely appealed.

## II.    Standard of Review and Applicable Law

A constitutional challenge raised for the first time on appeal is reviewed for plain error. *United States v. Bobb*, 577 F.3d 1366, 1371 (11th Cir. 2009). Plain error occurs where: (1) there is an error; (2) that is plain; and (3) that affects the defendant's substantial rights. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam). If all three conditions are met, we may correct an error that "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotations omitted and alterations adopted). An error is plain or obvious when it "flies in the face of either binding precedent or the explicit language of a statute or rule." *United States v. Bankston*, 945 F.3d 1316, 1318 (11th Cir. 2019) (quotations omitted). An error affects substantial rights when there is a "reasonable probability" that the outcome of the proceedings would have been different but for the error. *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016).

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Although the Fifth Amendment does not contain an equal protection clause, the Supreme Court construes the Fifth Amendment to contain an equal protection guarantee. *See Bolling v. Sharpe*, 347 U.S. 497, 498–99 (1954); *see also United States v. Scrushy*, 721 F.3d 1288, 1305 (11th Cir. 2013) (citing *Bolling* for the proposition that the Fifth Amendment's "equal

protection component" is "akin to the Equal Protection Clause of the Fourteenth Amendment").

Applying the Fourteenth Amendment, the Supreme Court in *Bearden v. Georgia* held that a sentencing court may revoke a defendant's probation and impose a sentence of imprisonment where it concludes that his failure to pay restitution was "willful" or he "failed to make sufficient bona fide efforts." 461 U.S. 660, 668–69, 672 (1983). The Supreme Court concluded:

> We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority.

*Id.* at 672.

### III.    Analysis

Here, the district court plainly erred by failing to make the appropriate inquiry required by *Bearden* before sentencing Goldstein to prison.[2]

---

[2] The government argues that the district court must have implicitly found that Goldstein's failure to pay was willful based on a record that would have supported such a finding. The court made no such finding, nor did it engage in the kind of inquiry required under *Bearden*. *See* 461 U.S. at 672.

24-11046                Opinion of the Court                9

We find that asking Goldstein "You can't pay it?  Or you choose not to pay it?" without giving him a chance to respond does not constitute an inquiry into why he had not paid restitution as required by *Bearden*.  Neither does asking Goldstein if he "had anything to say" at the end of his second hearing.  There, the district court said, "I'm going back from my own words and I told him no extensions, no continuances."  She continuously reiterated her statements that "you are going to prison if you do not pay what you owe."  Before that, at the hearing in December, the court made comments about "no excuses" even if Goldstein was "in a cast" or "in the hospital."  This is insufficient.  Per *Bearden*, a sentencing court "must inquire into the reasons for the failure to pay."  *Id.*  In combination, these instances indicate that the district court focused on the payment of restitution without an inquiry into the reason for Goldstein's failure to pay restitution before sentencing him to four months in prison.

Accordingly, the court's failure to inquire as to the reasons for Goldstein's failure to pay conflicts with the Supreme Court's holding in *Bearden* and constitutes plain error.  *See Bearden*, 461 U.S. at 672–73.  The record makes clear that this error affected Goldstein's substantial rights because, but for the error, the court would not have sentenced him to a term of imprisonment.  *See Molina-Martinez*, 578 U.S. at 194.  This error seriously affected the fairness and integrity of judicial proceedings and undermines Goldstein's constitutional rights.  *See Bearden*, 461 U.S. at 672–73.

## IV.    Reassignment

We consider reassignment to a different district court judge on remand a "severe remedy." *Stargel v. SunTrust Banks, Inc.*, 791 F.3d 1309, 1311 (11th Cir. 2015) (per curiam) (quotations omitted). We only reassign cases "where the trial judge has engaged in conduct that gives rise to the appearance of impropriety or a lack of impartiality in the mind of a reasonable member of the public." *United States v. Torkington*, 874 F.2d 1441, 1446 (11th Cir. 1989). Although we acknowledge reasons for concern with comments made at Goldstein's earlier sentencing hearings, we are confident the able district court judge will set aside her personal feelings about restitution on remand.

We therefore vacate and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**