**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-12001

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

PHILIP BECK,

FLORENCE LOUISE BECK,

a.k.a. Flossie,

JOSHUA MIGUEL MARTINEZ,

a.k.a. BabyJay,

a.k.a. Money,

*Defendants-Appellants.*

_____

Appeal from the United States District Court

for the Northern District of Florida

D.C. Docket No. 3:23-cr-00064-TKW-1

_____

_____

No. 24-12141
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOSHUA MIGUEL MARTINEZ,

*Defendant- Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:18-cr-00035-TKW-1
_____

Before ROSENBAUM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Joshua Martinez, Florence Beck, and Philip Beck were each found guilty of drug conspiracy and possession-with-intent-to-distribute offenses stemming from the shipment of a five-pound package of methamphetamine. Martinez appeals his convictions, Philip appeals his sentence, and Florence appeals both.[1] After carefully considering the district court's rulings, we affirm.

---

[1] Because Philip and Florence Beck share a last name, when we refer to them individually, we will refer to them by their first names.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In March 2023, a United States Postal Inspector intercepted a suspicious package bound for DeFuniak Springs, Florida. After obtaining a warrant, investigators determined the package contained five pounds of methamphetamine. The next day, investigators performed a controlled delivery of the package. After it was delivered, Wayne Campbell emerged from his trailer, picked up the package, and brought it inside. The investigators then obtained a warrant for Campbell's trailer. As the investigators continued monitoring the property, Florence Beck and Jamie Starkey soon arrived.

Inside the trailer, Florence asked Campbell to give her the package. Campbell had expected Martinez to pick up the package, so he was reluctant to allow Florence to take it at first. Campbell decided to call Martinez, who told Campbell that he could give the package to Florence, which Campbell then did.

Florence then left the trailer with the package in hand. As she returned to the car she arrived in, the investigators decided to execute the warrant. They found the package and two oxycodone pills in the car. Shortly after she had been arrested, Florence told Postal Investigator David Fowler that she "just came out here because my son Josh [Martinez] sent me here." Investigator Fowler continued to question her throughout the day of her arrest in a series of recorded interviews. In those interviews, Florence offered differing accounts of why she had gone to the trailer. In one account, she expanded on her earlier statement about Martinez and

claimed her reason for going to the trailer was to find his cell phone.  In another account, she explained she had gone to the trailer to try to arrange bail for her other son, Dillon.

A grand jury indicted the Becks, husband and wife, and Martinez, and charged them with one count of conspiracy to distribute methamphetamine.  The indictment also charged the defendants with possession with intent to distribute methamphetamine in two separate counts.  One count charged Philip, and the other charged Florence and Martinez.  Philip's possession charge stemmed from methamphetamine and cocaine found in his car after a traffic stop in January 2023.  Florence and Martinez's charge stemmed from the package of methamphetamine sent through the mail.

### Martinez's Bruton claim

The defendants first identified a potential *Bruton* issue in a spate of pretrial motions.  The three defendants moved to sever, and Philip and Florence additionally sought the exclusion of potentially inculpatory statements the others had made.

Martinez's motion to sever pointed out that Florence had made statements on the day of her arrest that the government might introduce at trial and that implicated the Supreme Court's decision in *Bruton v. United States*.  391 U.S. 123 (1968).  In the government's response, it noted that it did "not intend to introduce any statements made by any of the defendants during their arrest." The district court denied Martinez's motion to sever, relying on the government's representation that it did not intend to introduce those statements.  As part of the order, the district court wrote that

"the [g]overnment may not introduce . . . testimony about any statements made by any of the defendants during their arrests that directly inculpate any other defendant."

The issue next arose at trial, during the testimony of Investigator Fowler. The government asked him questions about his investigation, but, consistent with its pretrial representations, did not seek to introduce the recordings into evidence. When Florence cross-examined Investigator Fowler, she asked, "[s]o the fact that [Florence's] statement is not on the exhibit list that I see, do you know why that is?" Investigator Fowler responded, "[t]hat's a prosecutorial decision . . . ." Florence then asked, "[s]o the jury at this point has to rely on your recollection of the conversation because we don't have the audiotapes in evidence; is that correct?" Investigator Fowler responded that the government did have the tapes, but they had not been admitted as evidence.

On redirect, the government sought to admit the recordings to rebut any suggestion that it was hiding evidence. When the government moved to admit the recordings, the district court called for a sidebar conference with the parties. The district court asked Philip, "[a]re you going to object?" He replied, "[n]o . . . it's my understanding there is no *Bruton* problem with the introduction of any of these statements." Martinez then said, "[s]ame thing, Your Honor. Just if any of them contain any *Bruton* material, that would implicate *Bruton*, then we would obviously object." The district court remarked, "[y]'all have listened to them; I haven't . . . you tell

me." After a brief exchange about how many recordings the government was introducing, Florence explained, "I've reviewed them. . . . I don't remember every word, but I don't recall any *Bruton* material in [the recordings]." The district court responded, "I assume if there was, somebody would be objecting . . . but nobody's objecting." The sidebar ended and the recordings were admitted into evidence.

Investigator Fowler's testimony then concluded. Two more witnesses testified before the district court broke for lunch. Before the jury returned to the courtroom, Martinez told the district court that, "[d]uring the break, I did review . . . all of the recordings for Ms. Beck. It does—I believe it does—may implicate *Bruton*. We just would note an objection to its admissibility. I understand it's already admissible, so we'll probably just ask for a limiting instruction."

As the trial progressed, Florence played some of the recordings during her case-in-chief, but there were no further objections. At a charge conference, Martinez proposed a limiting instruction, but the district court found that pattern special instruction 2.2 sufficiently addressed the matter. That instruction cautioned the jury that, "[i]f the [g]overnment offers evidence that a [d]efendant made a statement or admission to someone after being arrested or detained, you must consider that evidence with caution and great care." It also instructed that "[a]ny such statement is not evidence about any other [d]efendant."

*Rule 404(b) evidence admitted against Martinez and Florence*

Before trial, Martinez and Florence moved to exclude rule 404(b)[2] evidence from being presented at trial. Martinez's motion sought to exclude any reference to an earlier conviction in the Northern District of Florida for distributing methamphetamine in 2019. At trial, the government offered the record of Martinez's conviction into evidence. Martinez objected. The district court overruled the objection and issued a limiting instruction. Martinez was found guilty on both counts and sentenced to 210 months' imprisonment.

Florence's motion concerned three pieces of evidence the government was seeking to use at trial. First, the government sought to introduce testimony from Michael Bowden that he would receive methamphetamine from Florence when Philip was not around and that he traded Lortab pills in exchange for methamphetamine. Second, the government sought to introduce testimony from Jamie Starkey that Florence regularly bought and sold oxycodone and other pills, and that Florence sold her the two oxycodone that were found in Starkey's car on the day of her arrest. Third, the government sought to introduce text messages between Florence and the other two defendants showing that the three were involved in selling drugs.

The district court denied Florence's pretrial motion. Florence had argued that the government did not offer sufficient proof

---

[2] Fed. R. Evid. 404(b).

that the events described occurred, and that the evidence was un-
fairly prejudicial when compared with its probative value. The dis-
trict court explained that our cases present a broad view of what is
admissible as similar-act evidence, but agreed to provide a limiting
instruction at an appropriate time.

### Post-trial issues

After trial, the district court held sentencing hearings for the
three defendants. At Philip's hearing, as part of his allocution, he
told the district court that Florence did not know that the package
contained methamphetamine. He claimed that Florence abhorred
drugs and would never willingly become involved in a drug dealing
endeavor. Philip then argued that he deserved a shorter sentence
because of the disparities that exist between pure-methampheta-
mine sentences and mixed-methamphetamine sentences. The dis-
trict court found this argument unpersuasive and explained that it
believed the disparities originated in the first instance from judges
departing from the guidelines.

Philip also argued that mitigating factors warranted a
shorter sentence. Before trial, Philip had offered to plead guilty to
the offenses in the indictment if the government would drop the
charges against Florence. The district court commented that while
many of the sentencing factors, and particularly Philip's criminal
history, favored a sentence near the top of the guidelines, because
Philip had attempted to mitigate the damage his actions caused his
family, a sentence at the bottom of the guidelines was appropriate

here. The district court sentenced Philip to 262 months' imprisonment.

Before Florence's hearing, she moved for a new trial, arguing that Philip's allocution was new evidence that was not available at trial. The district court ruled that she had not shown that she was entitled to a new trial because Philip's allocution was cumulative of other trial evidence. The district court also explained that Philip's allocution would not have produced a different result because a reasonable juror could have concluded, even while accepting that Philip was being truthful, that Florence had been willfully blind to the possibility that there were drugs in the package.

At Florence's sentencing hearing, she argued that she was entitled to safety-valve relief. The safety-valve provision allows a district court to sentence below the mandatory minimum when the defendant meets certain conditions. One of those conditions is that the defendant must truthfully provide the government with all the evidence she has about the offense. The district court ruled that Florence was not entitled to safety-valve relief because she had not met the tell-all condition. The district court explained that the evidence at trial showed that she was involved in the drug conspiracy, and that she knew there were drugs in the package. That was inconsistent with the story she told the government at their meeting, where she maintained she went to Campbell's trailer for bail money. After finding she was not entitled to safety-valve relief, the district court sentenced Florence to 120 months' imprisonment.

## STANDARD OF REVIEW

We review rulings on *Bruton* objections for abuse of discretion, but rulings on unpreserved objections only for plain error. *United States v. Joyner*, 899 F.3d 1199, 1206 (11th Cir. 2018). We review the admission of evidence under Federal Rule of Evidence 404(b), and "the denial of a motion for a new trial based on newly discovered evidence," for abuse of discretion. *United States v. Nerey*, 877 F.3d 956, 972 (11th Cir. 2017); *United States v. Markovich*, 95 F.4th 1367 (11th Cir. 2024). "We review a district court's factual findings about safety valve relief for clear error." *United States v. Maisonet*, 121 F.4th 194, 199 (11th Cir. 2024). And we review the substantive reasonableness of a sentence for abuse of discretion. *United States v. Irey*, 612 F.3d 1160, 1186, 1188-89 (11th Cir. 2010) (en banc).

## DISCUSSION

We divide our discussion into five parts. First, we consider whether the district court violated *Bruton* by admitting recordings of Florence's statements from the day of her arrest. Second, we address whether the district court abused its discretion in admitting rule 404(b) evidence of other drug-related activity against Martinez and Florence. Third, we review whether the district court abused its discretion in denying Florence's motion for a new trial based on Philip's allocution at his sentencing hearing. Fourth, we discuss whether the district court clearly erred when it found that Florence was not eligible for safety-valve relief because she was not truthful

in her tell-all meeting with the government. Fifth, we weigh whether Philip's sentence was substantively reasonable.

### Martinez's Bruton *claim*

Martinez argues the district court erred when it admitted at trial Florence's statements to investigators. "[A] defendant is deprived of his rights under the Confrontation Clause when his non-testifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 201–02 (1987). Because Florence did not testify, and her statements to investigators on the day of her arrest were admitted at trial, Martinez argues he was deprived of his confrontation right.

As an initial matter, we must decide whether Martinez has preserved this issue for appeal. We conclude he has not. Martinez did not preserve this issue because he failed to contemporaneously object to the admission of the recordings. When the government sought to introduce the recordings, Martinez hedged: "if any of them contain any *Bruton* material, that would implicate *Bruton*, then we would obviously object." The district court then clarified that it had not heard the recordings and asked if anyone was objecting. Martinez's counsel stood silent, failing to make a contemporaneous objection.

Martinez counters that he has preserved this issue for appeal in two other ways—first, when he filed his motion in limine, and

second, when he lodged an objection after the lunch break.  But neither action sufficed.

Starting with the motion in limine, it did refer to Florence's statements.  But the motion did not seek to exclude the recordings; instead, it sought to sever Martinez's trial from the others.  And the district court did not rule on the *Bruton* issue.  The district court ordered that the government could not introduce any evidence that was "directly inculpatory."  That tracks with the language we have used to describe material that would violate *Bruton*.  *See Joyner*, 899 F.3d at 1206.  But the district court did not go through each statement individually to decide what was and was not *Bruton* material.

In other words, the district court denied the request to sever, and as part of its reasoning it made clear that if the government sought to admit evidence that violated *Bruton*, it would prevent the government from doing so.  But that did not relieve Martinez of his obligation to object when the government later sought to introduce the evidence.  *See United States v. Wilson*, 788 F.3d 1298 (11th Cir. 2015) (finding a provisional ruling did not relieve counsel of the obligation to make a contemporaneous objection).  Once the government became aware of Florence's strategy to undermine Investigator Fowler's testimony, it changed course and sought to introduce the recordings to counteract the impression it was hiding evidence.  The district court's earlier ruling on the severance motion did not relieve Martinez's obligation to object to the *Bruton* material under these changed circumstances.

As to the objection Martinez made after the lunch break, it was not contemporaneous with the admission of the *Bruton* evidence. The post-lunch objection was made after the recordings had been admitted and two other witnesses had testified. *Cf. United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007) (holding that an objection to the admission of *Bruton* material was not timely when an objection was not made during direct examination, but only the next day). Martinez appeared to recognize that his objection was too late when he acknowledged he understood the recordings were "already admissible," and that he would "probably just ask for a limiting instruction." In sum, none of what Martinez did here was sufficient to satisfy the contemporaneous objection rule. *Cf. United States v. Gari*, 572 F.3d 1352, 1356 n.2 (11th Cir. 2009) ("Neither a motion in limine nor a blanket statement . . . is sufficient to preserve an evidentiary ruling for review by this court.").

Because Martinez failed to contemporaneously object to the introduction of the recordings, he must show plain error to prevail. To show plain error, Martinez "must establish that (1) an error occurred; (2) the error was obvious; (3) it affected his substantial rights in that it was prejudicial and not harmless; and (4) it seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Bankston*, 945 F.3d 1316, 1318 (11th Cir. 2019) (citation modified).

Martinez cannot show plain error for at least two reasons. First, he cannot show that an error occurred. The Supreme Court

has differentiated between statements "that directly implicate a defendant and those that do so indirectly." *Samia v. United States*, 599 U.S. 635, 648 (2023). When a statement is "not incriminating on its face," but instead "became so only when linked with evidence introduced later at trial," no constitutional violation has occurred. *Richardson*, 481 U.S. at 208.

The crux of Florence's statements to investigators was that Martinez had sent her to Campbell's trailer. But far from being inculpatory, Florence's statement was part of an attempt to offer a benign explanation for her presence at the trailer and her possession of the package. Although the story had inconsistencies, the idea was that she was there on behalf of one or both of her sons to retrieve a cell phone and acquire bail money. While there, Campbell happened to receive a wrongly delivered package, and Florence's friend Starkey was going to help return it to the post office for him. Taken at face value, then, the fact that Martinez had sent Florence to the trailer for that benign purpose was not directly inculpatory.

Any inculpatory effect of Florence's statement was dependent on inferences from other evidence presented at trial. So, for example, if a juror already believed that Florence was not credible, or if the juror believed that Martinez knew what was in the package before it arrived at the trailer, then the statement that Martinez sent Florence to the trailer could be seen as inculpatory. But that is the exact sort of "contextual implication" approach that the Su-

preme Court rejected in *Richardson*. 481 U.S. at 209. That approach would "require federal and state trial courts to conduct extensive pretrial hearings" to determine what was inferable from the entirety of the government's case, which would "work an unnecessary and imprudent change in the law." *Samia*, 599 U.S. at 654. After all, "all evidence that supports the prosecution's theory of the case is, to some extent, mutually reinforcing." *Id.* Because Florence's statement was not directly inculpatory, the district court did not err by admitting it.

Second, Martinez cannot show his substantial rights were affected. That "almost always requires that the error must have affected the outcome of the district court proceedings." *United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005) (citation modified). The "defendant rather than the government . . . bears the burden of persuasion with respect to prejudice," *id.* (citation modified), and must show a "reasonable probability of a different result, which means a probability sufficient to undermine confidence in the outcome," *id.* (citation modified). Here, there is no reasonable probability that admitting the recordings altered the outcome.

Martinez argues that the recordings were the only evidence the government had tying him to the methamphetamine in the package. Not so. Other evidence at trial showed Matinez's knowledge of the package's contents and involvement in the offenses.

Campbell, the owner of the trailer to which the methamphetamine was sent, testified that he allowed Martinez to have the

package delivered there.  Campbell further testified that he called Martinez before allowing Florence to take the package.  Campbell's phone showed that he and Martinez called each other several times after the package was delivered.  In addition, an Internet Protocol address and phone number linked to Martinez tracked the package. Finally, when Martinez was awaiting trial in county detention, he admitted that he knew there was methamphetamine in the package.

Even setting the recordings aside, "the government presented overwhelming evidence" in support of Martinez's conviction.  *See Turner*, 474 F.3d at 1278.  Martinez cannot show "that the outcome would have been different but for the *Bruton* error, and thus that [his] substantial rights were affected."  *Id*. at 1280.  Martinez therefore cannot show plain error.

*Rule 404(b) evidence admitted against Martinez and Florence*

Next, Martinez and Florence argue the district court abused its discretion by improperly admitting rule 404(b) evidence. Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  But it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  *Id*. R. 404(b)(2).

We apply a three-part test for reviewing rule 404(b) evidence:  "(1) the evidence must be relevant to an issue other than

the defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; and (3) the government must offer sufficient proof so that the jury could find that the defendant committed the act." *United States v. LaFond*, 783 F.3d 1216, 1222 (11th Cir. 2015) (citation modified).

Starting with Martinez, he argues the district court erred when it admitted evidence of his 2019 conviction for distributing methamphetamine. Martinez argues that the conviction was not admitted for the proper purpose of demonstrating his intent to commit the current crime and that the conviction's prejudicial impact was substantially outweighed by its minimal probative value.

But "[a] defendant who pleads not guilty to a drug conspiracy puts his intent at issue and opens the door to admission of prior drug-related offenses." *United States v. Harding*, 104 F.4th 1291, 1301 (11th Cir. 2024) (citation modified). And "[w]e have repeatedly held that evidence of prior drug-related offenses is highly probative of a defendant's intent and not overly prejudicial." *Id.* The same is true here.

Turning to Florence, she contends that the district court abused its discretion when it admitted three categories of rule 404(b) evidence against her: (1) Bowden's testimony; (2) Starkey's testimony; and (3) text messages on her phone. Florence argues that this evidence was not relevant, it was overly prejudicial, and the government failed to offer sufficient proof to allow the jury to conclude she committed the acts described in the evidence.

As to relevance, Florence's argument fails for the same reason that Martinez's does. Florence put her intent at issue by pleading not guilty. *See Harding*, 104 F.4th at 1301.

As to whether the probative value of the evidence was substantially outweighed by its prejudicial effect, it was not. The text messages and testimony had substantial probative value as to Florence's knowledge and involvement with drug dealing and to rebut her central defense that she rejected any involvement with drugs. "[E]vidence of prior drug dealings is 'highly probative of intent to distribute a controlled substance, as well as involvement in a conspiracy.'" *United States v. Colston*, 4 F.4th 1179, 1192 (11th Cir. 2021) (quoting *United States v. Cardenas*, 895 F.2d 1338, 1344 (11th Cir. 1990)). And that is true even when the prior acts deal with a different type of drug. *Id.* The probative value of the evidence introduced against Florence was thus not substantially outweighed by the risk of unfair prejudice.

Finally, as to whether the government has shown sufficient proof that Florence performed the acts described in the evidence, "[t]he prosecution can introduce evidence of a defendant's otherwise admissible acts if the jury could find by a preponderance of the evidence that the acts did in fact occur." *United States v. Bowe*, 221 F.3d 1183, 1192 (11th Cir. 2000). The three categories of evidence satisfied the preponderance test. As to the testimony, "the uncorroborated word of an accomplice . . . provides a sufficient basis for concluding that the defendant committed extrinsic acts admissible under [r]ule 404(b)." *Bowe*, 221 F.3d at 1192.

As to the text messages, Florence argues that testimony at trial shows that other people had access to her phone. While there was testimony that Philip occasionally used Florence's phone, there was also evidence that Philip sent drug-related messages to Florence's phone, and that she responded to those messages. And the language of other text messages in her phone also confirmed that Florence was the one sending the messages. For example, when communicating with Martinez about "coke" and "green stuff," she used the term "your father" to describe Philip. Under these circumstances, the district court did not abuse its discretion in declining to invoke the "extraordinary remedy" of excluding rule 404(b) evidence against either Martinez or Florence. *See United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011).

*Florence's motion for a new trial*

Florence also asserts that the district court abused its discretion when it denied her motion for a new trial based on newly discovered evidence. Motions for a new trial are highly disfavored. *Markovich*, 95 F.4th at 1379. To prevail, a defendant "must prove that the evidence was discovered after trial, the defendant's failure to discover the evidence was not due to a lack of diligence, the evidence is not merely cumulative or impeaching, the evidence is material, and the evidence would probably produce a different result at trial." *Id.* (citation modified). "Failure to meet any one of these elements will defeat a motion for a new trial." *Id.* (citation modified).

Florence's claim here is based on Philip's allocution at his sentencing hearing.  There, Philip said:

> I destroyed my family, Your Honor. . . .  I know my wife gave DeFuniak police information for them to know . . . I had drugs . . . .  I'm not angry about that. . . .  But the fentanyl and meth scared her.  She didn't know who I was any longer.  My wife, Flossie, Florence Beck, never knew what was in that package.  If she did, I knew she would have called the law and turned it in.  Your Honor, this very drug destroyed the man she loved, her family, everything she had.  She truly despises this drug.  She would never believe in a million years I would tell someone to give her anything with drugs in it. . . .  I told Mr. Campbell to give Ms. Beck the package.  He called to tell me she was there to get my son's bail.  I told him to give it to her but do not tell her what's inside of it.  Please, Your Honor, have the most leniency on her.  I'll take her sentence and mine.

The district court denied the new-trial motion because the allocution was cumulative and would not have produced a different result at trial.  We agree.

The allocution was cumulative because the evidence at trial showed that Philip had denied that his wife was involved with drugs—including a recording of a statement Philip made to an investigator.  Florence played recorded statements in which she denied her involvement with drugs.  And another witness testified that Florence was not involved with drugs.  In other words, there

was a wide array of evidence from which the jury could have de-
cided, if it believed the Becks were credible, that Florence was not
involved with drugs.  But despite the existence of some evidence in
favor of that theory, the jury rejected it.  Philip's statements at his
sentencing hearing were cumulative on this point.

In any event, Philip's allocution would likely not have
changed the result.  The district court noted that Philip had serious
credibility issues that made it unlikely the jury would take him at
his word.  Philip had a nearly thirty-year-long history of arrests and
convictions, including other drug-related offenses.  In addition,
Philip's assumption of sole responsibility here was made after his
conviction, and so of little consequence for his own sentencing, and
aimed at exonerating his wife.  Plus, the rule 404(b) evidence un-
dermined any attempt to show that Florence was uninvolved with
drugs.

Because Philip's allocution was cumulative with evidence
presented at trial, and would not have produced a different result,
Florence cannot show that she was entitled to a new trial.  The
district court did not abuse its discretion in denying her motion.

*Florence's claim to safety-valve relief*

Florence's final argument is that the district court clearly
erred when it found that she was not entitled to safety-valve relief
because she was not truthful in her tell-all meeting with the gov-
ernment.  The safety-valve provision, 18 U.S.C. § 3553(f), permits
a court to impose a sentence below the mandatory minimum, pro-
vided that the defendant has met five requirements by the time of

sentencing. At issue here is the requirement that the defendant "has truthfully provided to the Government all information and evidence the defendant has concerning the offense." *Id.* § 3553(f)(5). In providing that information, "the defendant has an affirmative duty to come forward and prove his information." *Maisonet*, 121 F.4th at 201.

The district court found that Florence was not eligible for safety-valve relief because she had not met her burden of truthfully providing information to the government. That finding was not clearly erroneous. Florence did meet with the government before her sentencing hearing. At the meeting, she continued to deny that she knew anything about the drug conspiracy and maintained that she had only gone to Campbell's trailer to get bail money for her son. Her denial was inconsistent with the testimony of Florence's friend, Starkey, who was with her on the day of her arrest. Starkey told police she drove Florence to Campbell's trailer because Florence had told her she needed to pick up a package.

Florence also maintained at the tell-all meeting with the government that she was not involved with drugs. Her statement was inconsistent with both the text messages she exchanged with Philip, which used coded language to discuss drugs, and the evidence of her involvement in the conspiracy presented at trial. Based on the trial evidence, the district court did not clearly err when it found that Florence had not been completely truthful in her tell-all meeting, and she was thus ineligible for safety-valve relief.

*Substantive reasonableness of Philip's sentence*

For his part, Philip contends that his 262-month prison sentence was substantively unreasonable. Determining whether a sentence is substantively reasonable "involves examining the totality of the circumstances, including an inquiry into whether the statutory factors in [section] 3553(a) support the sentence in question." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). A district court imposes a substantively unreasonable sentence "when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Irey*, 612 F.3d at 1189. We will only vacate a sentence where "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the [section] 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1190.

Philip argues that his sentence was substantively unreasonable for two reasons. First, he says the district court erred because the guidelines for pure methamphetamine are too harsh compared with the guidelines for mixed-methamphetamine, which results in unwarranted sentencing disparities. Second, he argues that the district court failed to properly consider mitigating evidence when it sentenced him. Neither argument has merit.

As to the disparity between mixed and pure methamphetamine, a district court is permitted to vary from the guidelines based

on policy disagreements with the guidelines, but it does not err by choosing not to do so.  *United States v. Cubero*, 754 F.3d 888, 900 (11th Cir. 2014).  Here, the district court considered Philip's argument and chose not to vary.  It was not clear error for the district court to make that call.

As to the other sentencing factors, Philip acknowledges that the district court did consider them at the hearing.  The district court considered Philip's substance abuse, his age, and his health.  And it found that despite these factors, the serious nature of the offense and Philip's extensive criminal history outweighed those mitigating factors and favored a guideline sentence.  "We will not second guess the weight given to a § 3553(a) factor."  *See United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022).

**AFFIRMED**.